# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

ROBERT VON SMITH
TERRY HOPE
RAMEZ TOHME                                    **Civil Action No.:  1:20-cv-11143-DLC**
MATTHEW PITTARD
MATTHEW ALLENDE
JASON MOLLENBRINK,

      Plaintiffs,

                v.

HE SHEIKH KHALID BIN HAMAD
BIN KHALIFA AL THANI, *et al.*,

      Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AL ANABI RACING USA, LLC'S, AL ANABI RACING LIMITED'S, SPEEDTECH LLC'S, AND AL ANABI PERFORMANCE, LLC'S MOTION TO DISMISS THE COMPLAINT FOR IMPROPER SERVICE, LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM AND, ALTERNATIVELY, MOTION FOR MORE DEFINITE <u>STATEMENT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 4

PLAINTIFFS' ALLEGATIONS ........................................................................................ 5

I. The Court Lacks Personal Jurisdiction Over Racing Limited because Racing Limited has not been Properly Served. .................................................................6

   A. Plaintiffs Have Not Properly Served Racing Limited..................................................6

II. Racing Limited, Speedtech, and Performance Do Not Have Sufficient Contacts With Massachusetts To Be Hailed Into Massachusetts Courts. .....................7

   A. Burden of Proof and Applicable Jurisdictional Analysis..............................................7

      1. Due Process Constraints ......................................................................................8

   B. This Court Lacks General Personal Jurisdiction over Racing Limited, Speedtech and Performance.......................................................................................8

   C. This Court Lacks Specific Personal Jurisdiction over Racing Limited, Speedtech and Performance.....................................................................................10

   D. Plaintiffs Cannot Establish Personal Jurisdiction over Racing Limited, Speedtech and Performance pursuant to an *Alter Ego* Theory. ................................10

      1. Plaintiffs Fail to Meet Their Burden of Demonstrating that Mr. Al-Thani is the "Alter Ego" of the Corporate Entities ......................................................10

      2. Plaintiffs Have Produced No Evidence that the Corporate Entities Have Ignored the Independence of their Separate Operations .....................................12

      3. Plaintiffs Have Produced No Evidence that the Corporate Entities' Structure Is Designed to Avoid Liability ............................................................13

      4. Plaintiffs Fail to Demonstrate that a Manifest Injustice Would Occur if the Court Did Not Exert Jurisdiction over the Corporate Entities ........................14

III. Plaintiffs Fail to State A Claim Under Rule 12(B)(6). .................................................14

   A. Legal Standard. ........................................................................................................14

   B. Plaintiffs' FLSA Claims (Counts 1, 4) Fail to State a Claim......................................15

      1. Plaintiffs Lack Standing to Assert FLSA Claims ...............................................15

      2. Plaintiffs' FLSA Claims Are Time-Barred.........................................................17

   C. Plaintiffs Fail to State an FLSA Unpaid Overtime or Retaliation Claim. ...................18

      1. Unpaid Overtime Compensation Claims ............................................................18

      2. Hope, Pittard and Allende Fail to Plead FLSA Retaliation ................................19

   D. Pittard, Tohme, Allende and Mollenbrink Fail to State a Claim for Unpaid Overtime Wages under California and Florida Law (Counts 2, 3)..............................20

E.  Pittard's Fla. Stat. § 448.102 Claim for Retaliation (Count 5) Fails to State a Claim..................................................................................................................21

F.  Allende's C.L.C. § 1102.5 Claim for Retaliation (Count 6) Fails to State a Claim..................................................................................................................22

G.  Hope's T.C.A. § 50-1-304 Retaliation Claim (Count 7) Fails to State a Claim. .........22

H.  Smith, Tohme and Mollenbrink's Breach of Contract Claims (Counts 8, 9, 10) Fail to State a Claim............................................................................................23

I.  Tohme, Allende And Mollenbrink's Claims under C.L.C. § 226 for Failure to Provide Wage Statements (Count 14) Fail to State a Claim. .......................................25

J.  Pittard's Claims for Violations of the Florida Unfair and Deceptive Trade Practices Act (Counts 11 and 12) Fail to State a Claim................................................26

K.  Plaintiffs' State-Law Tort Claims Against the Corporate Entities (Counts 13 And 16-27) Fail to State a Claim. .............................................................................26

L.  Plaintiffs Fail to State a Cause of Action for "Misrepresentation."............................29

CONCLUSION................................................................................................................. 30

## TABLE OF AUTHORITIES

### Cases

*Adelson v. Hananel*,
   510 F.3d 43 (1st Cir. 2007) ................................................................................. 7, 10

*Am. Online, Inc. v. Huang*,
   106 F. Supp. 2d 848 (E.D. Va. 2000) ....................................................................... 12

*Anderson v. Equinox Holdings, Inc.*,
   No. 2-18-cv-03759-SVW-RAO, 2019 WL 77139 (C.D. Cal. Jan. 2, 2019) ......................... 20

*ARC LifeMed, Inc. v. AMC-Tenn., Inc.*,
   183 S.W.3d 1 (Tenn. Ct. App. 2005) ....................................................................... 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 14

*Blackie v. State of Me.*,
   75 F.3d 716 (1st Cir.1996) ................................................................................... 19

*Bluetarp Fin., Inc. v. Matrix Co.*,
   709 F.3d 72 (1st Cir. 2013) ................................................................................... 10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ......................................................................................... 8, 9

*Cabi v. Bos. Children's Hosp.*,
   161 F. Supp. 3d 136 (D. Mass. 2016) ................................................................... 29, 30

*Carreras v. PMG Collins, LLC*,
   660 F.3d 549 (1st Cir. 2011) ................................................................................... 8

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
   678 F.3d 1 (1st Cir. 2012) ................................................................................... 16

*Connolly v. Roman Catholic Archbishop of Bos.*,
   1782CV1126, 2019 WL 2402290 (Mass. Super. Ct. May 17, 2019) .................................. 28

*Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*,
   938 F.2d 797 (7th Cir. 1991) ................................................................................. 17

*Currier v. Town of Gilmanton*,
   No. 18-CV-1204-LM, 2019 WL 3779580 (D.N.H. Aug. 12, 2019) ................................... 15

*Davidson v. Cao*,
   211 F. Supp. 2d 264 (D. Mass. 2002) ....................................................................... 26

*Doe v. Medeiros*,
   266 F. Supp. 3d 479 (D. Mass. 2017) ....................................................................... 27

*Donatelli v. Nat'l Hockey League*,
   893 F.2d 459 (1st Cir. 1990) ............................................................................... 8, 9

*Franklin v. Swift Transp. Co.*,
  210 S.W.3d 521 (Tenn. Ct. App. 2006) ................................................................. 22

*Futrell v. Payday Cal., Inc.*,
  190 Cal. App. 4th 1419 (Ct. App. 2010) ............................................................... 20

*GolTV, Inc. v. Fox Sports Latin Am., Ltd.*,
  16-24431-CIV, 2018 WL 1393790 (S.D. Fla. Jan. 26, 2018) ................................. 26

*Gould v. First Student Mgmt., LLC*,
  No. 16-cv-359-PB, 2017 WL 3731025 (D.N.H. Aug. 29, 2017) ............................ 17

*Guardia v. Clinical & Support Options, Inc.*,
  25 F. Supp. 3d 152 (D. Mass. 2014) ................................................................ 17, 18

*Hamilton v. Partners Healthcare Sys., Inc.*,
  209 F. Supp. 3d 379 (D. Mass. 2016), *aff'd,* 879 F.3d 407 (1st Cir. 2018) ....................... 16, 18

*Higdon v. Jackson*,
  393 F.3d 1211 (11th Cir. 2004) ............................................................................ 21

*Holder v. Bos. Police Dep't*,
  No. CV 20-10656-RGS, 2020 WL 2747855 (D. Mass. May 27, 2020) ................. 18

*Instant Infosystems, Inc. v. Open Text, Inc.*,
  No. BC619405, 2017 WL 5652470 (Cal. Super. Ct. Sept. 27, 2017) ..................... 23

*Int'l Broth. of Police Officers, Local 433 v. Mem'l Press, Inc.*,
  575 N.E.2d 376 (Mass. App. Ct. 1991) ............................................................ 27, 28

*Int'l Floor Crafts, Inc. v. Adams*,
  477 F. Supp. 2d 336 (D. Mass. 2007) .................................................................... 29

*InterGen N.V. v. Grina*,
  344 F.3d 134 (1st Cir. 2003) ................................................................................. 11

*Kelly v. Middlesex Corp.*,
  616 N.E.2d 473 (Mass. App. Ct. 1993) ................................................................. 28

*Levan v. Sears, Roebuck & Co.*,
  984 F. Supp. 2d 855 (E.D. Tenn. 2013) ................................................................ 23

*Manning v. Bos. Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2014) ................................................................................... 21

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
  142 F.3d 26 (1st Cir. 1998) ......................................................................... 7, 8, 10

*Molinos Valle Del Cibao, C. Por A. vs. Lama*,
  No. 07-23066-CIV, 2008 WL 11333544 (S.D. Fla. Oct. 22, 2008) ....................... 26

*Naranjo v. Spectrum Sec. Servs., Inc.*,
  40 Cal. App. 5th 444 (Ct. App. 2019) ................................................................... 25

*Nejadian v. Cty. of L.A.*,
  40 Cal. App. 5th 703 (Ct. App. 2019) ................................................................... 22

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987) ................................................................................................ 6

*Owner-Operator Indep. Drivers Ass'n v. Concord Efs*,
  59 S.W.3d 63 (Tenn. 2001) ................................................................................ 24

*Peñalbert–Rosa v. Fortuño–Burset*,
  631 F.3d 592 (1st Cir. 2011) ............................................................................. 15

*Pike v. Clinton Fishpacking, Inc.*,
  143 F. Supp. 2d 162 (D. Mass. 2001) ................................................................. 7

*Posely v. Eckerd Corp.*,
  433 F. Supp. 2d 1287 (S.D. Fla. 2006) ............................................................. 21

*Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*,
  953 F.2d 21 (1st Cir. 1992) ................................................................................. 6

*Pruell v. Caritas Christi*,
  678 F.3d 10 (1st Cir. 2012) .......................................................................... 18, 19

*Ruffino v. State St. Bank & Tr. Co.*,
  908 F. Supp. 1019 (D. Mass. 1995) .................................................................. 27

*S.E.C. v. Patel*,
  No. CIV. 07-CV-39-SM, 2009 WL 3151143 (D.N.H. Sept. 30, 2009) ................. 27

*Sandoval v. Milyard*,
  No. CIV.A. 09-CV-01097 B, 2009 WL 1851033 (D. Colo. June 25, 2009) ........... 15

*Schaefer v. Cybergraphic Systems, Inc.*,
  886 F. Supp. 921 (D. Mass. 1994) ....................................................... 10, 13, 14

*Setzer v. First Choice Lending Servs., LLC*,
  No. 18-5192, 2018 WL 7500477 (6th Cir. Sept. 10, 2018) ............................... 24

*Shea v. Millett*,
  No. 17-CV-12233-ADB, 2019 WL 184074 (D. Mass. Jan. 14, 2019) ................. 29

*Spanish Inn, Inc. v. Nara Bank*,
  No. D066487, 2015 WL 1035418 (Cal. Ct. App. Mar. 6, 2015) .......................... 24

*Spinks v. Equity Residential Briarwood Apartments*,
  171 Cal. App. 4th 1004 (Ct. App. 2009) ............................................................ 24

*Stewart v. Memphis Hous. Auth.*,
  287 F. Supp. 2d 853 (W.D. Tenn. 2003) ........................................................... 23

*Terbeek v. Panda Rest. Grp., Inc.*,
  No. E059775, 2015 WL 1863046 (Cal. Ct. App. Apr. 22, 2015) ......................... 22

*Thomas v. Tyco Int'l Mgmt. Co., LLC*,
  416 F. Supp. 3d 1340 (S.D. Fla. 2019) ............................................................. 21

*U.S. ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*,
  713 F.3d 662 (1st Cir. 2013) ............................................................................. 15

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
  960 F.2d 1080 (1st Cir. 1992) ................................................................. 8, 9, 11, 14

*Ward v. United Airlines, Inc.*,
  No. S248702, 2020 WL 3495310 (Cal. June 29, 2020) .................................... 21, 25

*White v. Purdue Pharma, Inc.*,
  369 F. Supp. 2d 1335 (M.D. Fla. 2005) .................................................................... 21

*Williams v. United Tech.*,
  No. 12-10294-RGS, 2013 WL 1681895 (D. Mass. Apr. 12, 2013) ........................ 20

*World Depot Corp. v. Onofri*,
  No. 16-12439-FDS, 2017 WL 6003052 (D. Mass. Dec. 4, 2017) ............... 7, 9, 10, 13

*Yayo v. Museum of Fine Arts*,
  No. CIV.A. 13-11318-RGS, 2014 WL 2895447 (D. Mass. June 26, 2014) ............. 19

## Constitutions

California Civil Code
  Section 337 ................................................................................................................... 24
  Section 339 ................................................................................................................... 24

California Labor Code
  Section 1102.5 ............................................................................................................. 22
  Section 1102.5(f) ......................................................................................................... 22
  Section 226(a) ................................................................................................... 3, 25, 26
  Section 226(j) ............................................................................................................... 26
  Section 510 ............................................................................................................ 20, 21

Code of Civil Procedure
  Section 340(a) .............................................................................................................. 22

Florida Statutes
  Section 448.01 ............................................................................................................. 21
  Section 448.102 ........................................................................................................... 21

Massachusetts General Laws
  Section 223A, § 3 ........................................................................................................... 7

Tennessee Code
  Section 4-21-311 ......................................................................................................... 23
  Section 50-1-304(a) ..................................................................................................... 22
  Section 50-1-304(c) ..................................................................................................... 23

United States Code
  Title 29, section 215(a)(3) ................................................................................... 17, 19
  Title 29, section 255 ................................................................................................... 17

**Statutes and Codes**

Alabama Rules of Civil Procedure
    Rule 4(c)(6).................................................................................................. 6
    Rule 12(b).................................................................................................... 5
    Rule 12(b)(2).......................................................................................... 1, 4
    Rule 12(b)(5).......................................................................................... 1, 4
    Rule 12(b)(6).................................................................................. 1, 2, 5, 14
    Rule 12(e).................................................................................................... 1
    Rule 4(e)(1).................................................................................................. 6
    Rule 4(h)...................................................................................................... 1
    Rule 4(h)(1).................................................................................................. 6
    Rule 4(h)(1)(B)............................................................................................ 6
    Rule 8(a)(2)................................................................................................ 14

Federal Rules of Civil Procedure
    Rule 9(b)............................................................................................... 4, 29

Massachusetts Rules of Civil Procedure
    Rule 4(d)(2).................................................................................................. 6

Defendants Al Anabi Racing USA, LLC ("Racing USA") Al Anabi Racing Limited ("Racing Limited"), Speedtech, LLC ("Speedtech"), and Al Anabi Performance, LLC ("Performance") (collectively with Racing USA, Racing Limited,  and Speedtech, the "Corporate Entities") respectfully move to dismiss Plaintiffs' Complaint (the "Complaint") on various grounds applicable to each, including: improper service for Racing Limited (Fed. R. Civ. P. 12(b)(5)); lack of personal jurisdiction for Racing Limited, Speedtech, and Performance (Fed. R. Civ. P. 12(b)(2)); and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Alternatively, the Corporate Entities seek a more definite statement under Fed. R. Civ. P. 12(e).

| Grounds for Dismissal | Summary of Arguments |
|---|---|
| Improper Service as to Racing Limited | Plaintiffs have failed to serve Racing Limited in any acceptable manner under FRCP 4(h). Instead of attempting to serve Racing Limited in good faith, Plaintiffs have merely served an inactive subsidiary of Racing Limited, who is not authorized to accept service on behalf of Racing Limited. Accordingly, the Complaint must be dismissed as to Racing Limited pursuant to FRCP 12(b)(5) for improper service. |
| Lack of Personal Jurisdiction Over Racing Limited, Performance, and Speedtech | Neither Racing Limited, Performance, or Speedtech are domiciled in Massachusetts, nor do these entities have any relevant contacts in Massachusetts as it relates to Plaintiffs' claims. Because none of Plaintiffs' claims arise out Racing Limited's, Performance's, or Speedtech's negligible contacts with Massachusetts, there is no personal jurisdiction over these three entities, warranting dismissal of the Complaint pursuant to FRCP 12(b)(2). |
| Racing Limited, Performance, and Speedtech Are Not the "*Alter Ego*" of Mr. Al-Thani or Racing USA | Plaintiffs' attempt to categorize the Corporate Entities as "*alter egos*" of one another is contradicted by the evidence attached to this Motion. Plaintiffs merely assert unsubstantiated and conclusory allegations regarding an "*alter ego*" theory in order to establish jurisdiction over all the Defendants—all of which are insufficient to meet Plaintiffs' burden with respect to establishing jurisdiction. |
| Plaintiffs' FLSA Claims (Counts 1 & 4) Fail to State a Claim Upon Which Relief May Be Granted | *First*, Plaintiffs fail to establish they have standing to assert claims against the Corporate Entities under the FLSA, *i.e.*, Plaintiffs have failed to state facts which sufficiently allege the existence of an employment relationship between the Corporate Entities and any named Plaintiff.<br>*Second*, most of the Plaintiffs' FLSA claims are time barred by the applicable two-year statute of limitations. |

1

| Grounds for Dismissal | Summary of Arguments |
|---|---|
| | *Third*, even if Plaintiffs have standing and their claims are not time barred, Plaintiffs fail to sufficiently plead the requisite elements of their FLSA retaliation and unpaid overtime claims, requiring dismissal of their claims pursuant to FRCP 12(b)(6). |
| Pittard, Tohme, Allende and Mollenbrink Fail to State a Claim for Unpaid Overtime Wages (Counts 2 & 3) | *First*, Plaintiffs failed to plead the existence of an employment relationship with any of the Corporate Entities.<br>*Second*, Plaintiffs' claims under California law must be dismissed because they do not allege that they performed the majority of their work in California, which prevents a plaintiff from asserting claims under California labor law.<br>*Third*, Plaintiffs do not sufficiently plead facts to show they were even entitled to overtime pay from any of the Defendants.<br>*Finally*, Pittard's claim under Florida law must be dismissed because Florida courts have declared Florida's Unpaid Overtime Statute unconstitutional. |
| Pittard Fails to State a Claim For Retaliation Under Florida Law (Count 5) | Pittard fails to allege the necessary causal nexus to establish that his alleged termination from employment was the result of protected activity. |
| Allende Fails to State a Claim for Retaliation Under California Law (Count 6) | *First*, Allende's claim for Retaliation under California law is time barred. Specifically, retaliation claims are governed by a one-year statute of limitations, and Allende alleges that his employment was terminated on February 4, 2018—more than *two years* before the filing of this Complaint.<br>*Second*, even if Allende's claim was not time barred, he does not allege any activity he refused to participate in, or that he complained of or reported to a supervisor, that would result in an actual violation of or noncompliance with a local, state, or federal statute, rule or regulation. Due to this failure, Allende's retaliation claim must be dismissed. |
| Hope Fails to State a Claim for Retaliation Under Tennessee Law (Count 7) | *First*, Hope's claim for retaliation under Tennessee law is time barred. Specifically, retaliation claims are governed by a one-year statute of limitations, and Hope alleges that his employment was terminated in July 2018—almost *two years* before the filing of this Complaint.<br>*Second*, Hope does not allege that his termination was solely due to his alleged refusal to comply with Mr. Al-Thani's alleged illegal demands. Accordingly, Hope's claim must be dismissed for failure to state a claim. |
| Smith, Tohme, and Mollenbrink Fail to State a Claim for Breach of Contract Under Tennessee and California Law (Counts 8, 9 & 10) | *First*, to succeed on a breach of contract claim, both California and Tennessee require that a plaintiff plead the existence of a valid contract. Here, Plaintiffs have simply failed to do so: (1) they merely claim to have been employed by "Defendants," without any supporting (and non-conclusory) allegations relating to the material |

| Grounds for Dismissal | Summary of Arguments |
| --- | --- |
| | terms of the contracts; and (2) they fail to attach the alleged contracts to the Complaint. <br> *Second*, and similarly, Plaintiffs fail to identify precisely who they were employed by. This warrants dismissal of these claims as well, as a breach of contract claim may only be asserted against a signatory to the contract, or, in limited circumstances, third party beneficiaries. |
| Tohme, Allende and Mollenbrink Fail to State a Claim for Failure to Provide Wage Statements Under California Law (Count 14) | *First*, Plaintiffs' claims are time barred. Specifically, claims for a Failure to Provide Wage Statements are governed by a one-year statute of limitations. Tohme alleges he was employed "by Defendants from June of 2017 to June 30, 2018" Compl. ¶369; Allende alleges he was "employed as a paramedic by Defendants from approximately October 15, 2017, to February 4, 2018" Compl. ¶494; Mollenbrink alleges he was "employed as a licensed, registered nurse by Defendants from approximately May 2018 to March 2019." Compl. ¶522. All three Plaintiffs fail to assert claims within the one-year statute of limitations, thus making their claims time barred. <br> *Second*, Plaintiffs fail to state a claim under C.L.C. § 226(a) because they have not alleged that they worked "the majority of the time in California," as required to state a § 226 claim. <br> *Third*, Tohme, Allende and Mollenbrink have failed to allege basic facts that they were not salaried excempt workers, thus excluding them from certain requirements of § 226, as required to state a claim under the California Labor Code. |
| Pittard Fails to State Claims Under Florida Deceptive and Unfair Trade Practices Act (Counts 11 & 12) | *First*, Pittard fails to assert a single allegation against the Corporate Entities under Counts 11 & 12. Instead, Pittard only asserts allegations against Mr. Al-Thani. Accordingly, Pittard fails to state a claim against the Corporate Entities. <br> *Second*, even presuming that Pittard did assert allegations against the Corporate Entities, Florida courts have limited application of the Deceptive and Unfair Trade Practices Act to conduct that occurred in Florida. Because Pittard alleges that Mr. Al-Thani committed all relevant tortious acts outside of Florida, Pittard's claims must be dismissed. |
| Plaintiffs' Tort Claims Must Be Dismissed for Failure to State a Claim (Counts 13 & 16-27) | *First*, Count 13 for "Personal Injury" under California law must be dismissed because there is no such indepdent cause of action. <br> *Second*, Plaintiffs' Tort Claims are all premised on conduct allegedly committed by Mr. Al-Thani. Because Plaintiffs do not set forth the necessary facts to establish that Mr. Al-Thani was acting on behalf of every one of the Corporate Entities at the time he allegedly committed each tortious act, the Tort Claims against the Corporate Entities must be dismissed. |

| Grounds for Dismissal | Summary of Arguments |
|---|---|
| Plaintiffs' Misrepresentation Claims Must Be Dismissed for Failure to Allege Their Claims with Specificity (Count 15) | Put simply, Plaintiffs utterly fail to comply with the heightened pleading standard set forth in FRCP 9(b)—which governs claims for misrepresentation. Instead, Plaintiffs merely assert that "Defendants" made numerous representations over the course of various years. Because Plaintiffs fail to allege with specificity the "who, what, where, and when of the allegedly" false representations, their claims for Misrepresentation must be dismissed. |

## INTRODUCTION[1]

Lacking factual support for their allegations, Plaintiffs have drafted a hydra-like Complaint tailored for the tabloids, but not this Court. For Pittard and Allende, this is their third and successive filing, having previously filed a complaint and amended complaint in the Middle District of Florida. That first action was so devoid of jurisdictional allegations and contacts with the forum that they quickly sought refuge in a voluntary dismissal after defendants moved to dismiss. In this sequel, four other Plaintiffs have emerged to join Pittard and Allende in a Complaint that has now ballooned to 799 paragraphs and 134 pages, but their pleading does not garner any strength in numbers or in its size. The Complaint should be dismissed for three independent reasons—all of which are dispositive to the Corporate Entities.

*First*, the Complaint should be dismissed pursuant to FRCP 12(b)(5)—as to Racing Limited, a Cyprus-based entity—because Plaintiffs failed to comply with the service requirements set forth in FRCP 4(h) for service of process on foreign-based entities.

*Second*, the Complaint should be dismissed pursuant to FRCP 12(b)(2)—as to Racing Limited, Performance, and Speedtech—because the Plaintiffs have not alleged a single contact that these three entities had with Massachusetts which gave rise to Plaintiffs' claims in this lawsuit. Plaintiffs' attempt to loop in these three entities based on brittle (and conclusory) alter ego allegations should not be given any credence by the Court—and indeed, all the alter ego allegations are contradicted by the evidence submitted herewith.

---

[1] All emphasis herein is added unless otherwise noted.

*Third*, even if this Court finds that service was proper and that there is personal jurisdiction over all the Corporate Entities, the Complaint should still be dismissed pursuant to FRCP 12(b)(6)—as to all Corporate Entities—for failure to state a claim. Plaintiffs' shotgun-Complaint fails to establish the main pillars on which this pleading stands and falls—that Plaintiffs were employed by the Corporate Entities. Hence, the Court should dismiss Plaintiffs' Complaint against the Corporate Entities. In the alternative, the Court should grant the Corporate Entities' request for a more definite statement, as the Complaint is—to put it mildly—unintelligible.

## **PLAINTIFFS' ALLEGATIONS**

The Complaint attempts to lump all Defendants together with conclusory allegations that make it impossible to determine which entity the allegation is directed. Plaintiffs' counts all depend on cursory allegations that Corporate Entities are liable for wage, contract, and tort claims. Compl. ¶2. They scatter historical facts regarding Defendant Khalid Bin Hamad Bin Khalifa Al Thani's ("Mr. Al-Thani") involvement in various auto-racing businesses (Compl. ¶¶45-120) describing entities not named as defendants (Compl. ¶¶54, 55, 65, 78). Plaintiffs fail to adequately plead that the Corporate Entities are *alter egos* of each other. Compl. ¶¶36-40. Significantly, Plaintiffs admit that unnamed third-party entities and an unnamed individual paid their salaries. Compl. ¶¶62-65, 67. They allege generally that only later did Mr. Al-Thani and the Corporate Entities allegedly pay them. Compl. ¶¶62, 64, 66. This allegation that they were employed by *all* the Corporate Entities *all* at the same time includes no specific date or entity, alleging only that they were paid by Defendant Donald Greenbaum ("Mr. Greenbaum") and from the "Defendants'" bank accounts. Compl. ¶66. Plaintiffs' lack of specificity precludes the relief they seek.

Plaintiffs' meandering narrative fails to state a claim under Rule 12(b) because it leaves to conjecture the essential facts required to plead the causes of action against the Corporate Entities. Plaintiffs allege only general facts regarding employment and labor practices for Plaintiffs. Plaintiffs' conclusory allegations that *all* the Corporate Entities are the *alter egos* of Mr. Al-Thani cannot overcome the myriad pleading deficiencies and the monolithic use of "Defendants" throughout their Complaint.

I.     **THE COURT LACKS PERSONAL JURISDICTION OVER RACING LIMITED BECAUSE RACING LIMITED HAS NOT BEEN PROPERLY SERVED.**

FRCP 4(h)(1) allows service of process on a foreign corporation in the United States in accordance with (1) the laws of the state of the forum court, (2) the laws of the state where service is effected, (3) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, and (4) if the agent is one authorized by statute and the statute so requires, by also mailing a copy of each to the defendant. *See* FRCP 4(h)(1); *see also* FRCP 4(e)(1).[2]

A.     **Plaintiffs Have Not Properly Served Racing Limited.**

Racing Limited is a foreign corporation as it is organized under the laws of Cyprus. *See* Declaration of Donald Greenbaum in Support of Motion to Dismiss ("Limited Dec.") ¶3, **Exhibit "A."** Pursuant to Massachusetts law,[3] Alabama law,[4] and FRCP 4(h)(1)(B), a foreign corporation that is served in the United States must be served by having a copy of the summons and complaint delivered to an officer, authorized agent, or person in charge of the business.

Plaintiffs' service on Al Anabi Alabama Property, LLC ("Alabama Property"), an inactive subsidiary of Racing Limited, is not proper service because Alabama Property is not an agent authorized to accept service on behalf of Racing Limited. Limited Dec. ¶43, Ex. "A." Plaintiffs are merely attempting to skirt proper service via internationally agreed means and service on Racing Limited is improper.

---

[2] "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "[A]ctual notice itself, without more, is insufficient to satisfy the requirements of [FRCP 4]." *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 24 (1st Cir. 1992).

[3] *See* Mass. R. Civ. P. 4(d)(2) (foreign corporation can be served in Massachusetts "by delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process, provided that any further notice required by law be given").

[4] AL ST RCP Rule 4(c)(6) (foreign corporation can be served in Alabama "by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process").

## II.  RACING LIMITED, SPEEDTECH, AND PERFORMANCE DO NOT HAVE SUFFICIENT CONTACTS WITH MASSACHUSETTS TO BE HAILED INTO MASSACHUSETTS COURTS.

Defendants Racing Limited, Speedtech, and Performance are foreign entities with no substantive contacts with the forum or the Plaintiffs. Plaintiffs' attempt to hail them into court merely to gain jurisdiction over Mr. Al-Thani on inadequate *alter ego* allegations is in violation of their due process rights.

### A.  Burden of Proof and Applicable Jurisdictional Analysis.

When a defendant moves to dismiss for want of *in personam* jurisdiction the burden shifts to plaintiff to establish that jurisdiction exists. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).[5] As the federal statute at issue here does not provide for nationwide service of process, the Court is "obliged to look to the law of Massachusetts in determining whether the court may assert jurisdiction over the defendants." *Id*. Massachusetts law provides that even under federal question jurisdiction "a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does not offend the Due Process Clause of the Fourteenth Amendment." *Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 166–67 (D. Mass. 2001) (citations omitted). However, "in Massachusetts, the Court can 'sidestep the statutory inquiry and proceed directly to the constitutional analysis because the state's long-arm statute is coextensive with the limits allowed by the Constitution." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (internal citation omitted).[6]

---

[5] The Court may employ three separate standards to assess whether Plaintiffs have carried their burden. Where, as here, the Court is called to make that assessment without an evidentiary hearing, the *prima facie* standard applies. *See World Depot Corp. v. Onofri*, No. 16-12439-FDS, 2017 WL 6003052, at *7 (D. Mass. Dec. 4, 2017).

[6] Under the Massachusetts Long Arm Statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (e) having an interest in, using or possessing real property in this commonwealth…" Mass. Gen. Laws c. 223A, § 3.

1.      Due Process Constraints

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted). "In analyzing a defendant's contacts, the decisionmaker's attention must be focused on 'the relationship among the defendant, the forum, and the litigation.'" *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (citation omitted).

A defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* It must also be reasonable and foreseeable that the defendants' conduct with the forum is such that they should reasonably anticipate being hailed into court there. *Id*. When assessing whether the exercise of personal jurisdiction comports with the Due Process Clause, courts examine whether a defendant's contact with the forum state implicates general or specific jurisdiction. *See Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011). Racing Limited, Speedtech, and Performance lack sufficient contacts with Massachusetts to be subject to personal jurisdiction in the Commonwealth—under either general or specific jurisdiction.

**B.      This Court Lacks General Personal Jurisdiction over Racing Limited, Speedtech and Performance.**

"General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" *Mass. Sch. of Law at Andover, Inc.*, 142 F.3d at 34 (internal citation omitted). Courts engage in a *two*-step inquiry: *First*, the court must examine the defendants' contact with the forum; if the contacts do not exist in sufficient abundance, the inquiry ends. *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). For general jurisdiction to exist, a defendant must have deliberately engaged in *significant* activities within the state or have created continuing obligations therein. *Burger King Corp.*, 471 U.S. at 475–76.

8

*Second*, even when continuous and systematic contacts in the state are found, the court must still examine the *Gestalt* Factors to determine if the exercise of jurisdiction comports with constitutional requirements. *See Donatelli*, 893 F.2d at 465. The Gestalt factors include: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *See Burger King Corp.*, 471 U.S. at 477. Only then can a defendant be hailed into court under general jurisdiction.

Here, all three entities are foreign: Racing Limited is a Cyprus entity ("Limited Dec.") ¶3, Ex. "A."), Speedtech is an Alabama entity (Declaration of Shannon Jenkins, Speedtech ("Jenkins Dec.") ¶21, **Exhibit "B"**), and Performance is a North Carolina entity (Declaration of Donald Greenbaum, Performance ("Performance Dec.") ¶14, **Exhibit "C"**). None of these entities (1) conduct business in Massachusetts; (2) contract to supply services or products in Massachusetts; (3) have an interest in real property in Massachusetts; or (4) insure, employ, or contract employees or entities that reside in Massachusetts. Limited Dec. ¶¶25-29, Ex. "A"; Performance Dec. ¶¶15-20, Ex. "C"; and Jenkins Dec. ¶¶22-28, Ex. "B." Furthermore, none of the entities have ever employed the Plaintiffs.[7] Limited Dec. ¶30, Ex. "A"; Performance Dec. ¶21, Ex. "C"; and Jenkins Dec. ¶29, Ex. "B."

Racing Limited, Speedtech, and Performance simply do not have continuous and systematic contacts in the significant abundance—or in *any* abundance—required to exercise general jurisdiction over them. *See United Electric*, 960 F.2d at 1088. Based on the lack of continuous and systematic contacts with the forum, the Court need not reach the *Gestalt*-factors analysis.[8]

---

[7] Plaintiffs' bare allegations that they were employed by all the Corporate Entities is contradicted by sworn evidence and cannot be relied upon to establish jurisdiction. Compl. ¶16, 45, 46; *Onofri*, 2017 WL 6003052, at *8 ("A plaintiff may not rely on unsupported allegations in [its] pleadings. Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists").

[8] Even if the Court were to find continuous and systematic contacts, the *Gestalt* factors would weigh heavily against finding jurisdiction over Racing Limited, Speedtech, and Performance. Plaintiffs simply do not have any contact with this forum other than the now controverted allegations that the Corporate Entities "employed" them. Compl. ¶16.

**C.    This Court Lacks Specific Personal Jurisdiction over Racing Limited, Speedtech and Performance.**

"Specific jurisdiction is more limited and requires a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Mass. Sch. of Law at Andover, Inc.*, 142 F.3d at 34. To exercise specific jurisdiction, the following factors are considered: (1) relatedness; (2) purposeful availment, (3) reasonableness. *Adelson*, 510 F.3d at 49. Plaintiffs cannot get past the first factor because they allege no relationship between their claims and the forum other than the now controverted employment claims. *Bluetarp Fin., Inc. v. Matrix Co.*, 709 F.3d 72, 80 (1st Cir. 2013).

**D.    Plaintiffs Cannot Establish Personal Jurisdiction over Racing Limited, Speedtech and Performance pursuant to an *Alter Ego* Theory.**

    1.    <u>Plaintiffs Fail to Meet Their Burden of Demonstrating that Mr. Al-Thani is the "Alter Ego" of the Corporate Entities</u>

Plaintiffs' conclusory allegations cannot support the argument that the Corporate Entities are *alter egos* of each other.[9] Plaintiffs have filed in this jurisdiction, knowing that Racing USA is subject to the Court's general jurisdiction, and have made vague, conclusory assertions that Racing Limited, Speedtech, and Performance are the "alter ego" of Racing USA solely for purposes of trying to establish jurisdiction over Mr. Al-Thani. *See generally* Compl. ¶¶36-44; 100-118. Plaintiffs do not, however, satisfy the test for piercing the corporate veil. In determining what veil-piercing test to apply, courts in federal question cases should "look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form," which ordinarily results in less respect for the corporate form than the Massachusetts common law test for veil piercing. *Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921, 925 (D. Mass. 1994). Because the Plaintiffs' Complaint sets forth the same claims as those in *Schaefer*, *i.e.*, FLSA and RICO claims, the same standard for corporate veil-piercing will apply here.

---

Plaintiffs cannot stand on controverted false allegations because they bear the burden of establishing that jurisdiction in the forum is proper. *Onofri*, 2017 WL 6003052, at *8. The *Gestalt* factor analysis turns on the due-process concerns and the interests of the forum and all of those favor the Corporate Entities.

[9] Plaintiffs' *alter ego* allegations are directed at the relationship between Mr. Al-Thani and the Corporate Entities and do not sufficiently allege that the Corporate Entities are *alter egos* of each other. Compl. ¶¶37, 40. The Plaintiffs' *alter ego* allegations are centered around their purported employment, which, for jurisdictional purposes, is controverted by evidence.

The limited liability and integrity of the corporate form is the "cornerstone of corporate law." *InterGen N.V. v. Grina*, 344 F.3d 134, 150 (1st Cir. 2003). This remains true even under federal common law: "[a]dopting a federal veil-piercing standard for [federal question] cases is not tantamount to saying that separate corporate identities can be overlooked at will or at whim," as the federal standard "still demands a *substantial showing*." *United Electric*, 960 F.2d at 1092. Under federal common law applicable to cases involving the FLSA, Plaintiffs must demonstrate:

> (1) whether the parent and the subsidiary ignored the independence of their separate operations;
> (2) whether some fraudulent intent existed on the principals' part; and
> (3) whether a substantial injustice would be visited on the proponents of veil piercing should the court validate the corporate shield.

*Id*. at 1093.

Like in *United Electric*, there is "a glaring shortfall in the proof" to pierce the corporate veil here, and thus, the Court's personal jurisdiction over Racing USA does not relieve the Plaintiffs of proving that this Court it has personal jurisdiction over the foreign entities, Racing Limited, Speedtech, and Performance. The uncontroverted facts relevant to the relationships between the Corporate Entities are the following:

### a. Racing USA

Racing USA is primarily a logistics company and its operations are managed independently from Racing Limited (Limited Dec. ¶¶14-19, Ex. "A"); Plaintiffs have never been salaried employees (*id.* at ¶32); it files its own tax returns and keeps its own corporate formalities, including books and record and financial accounting (*id.* at ¶¶15-19); it does not comingle assets with Racing Limited, its parent (*id.* at ¶20); it is not owned or operated by Mr. Al-Thani (*id.* at ¶¶21-24).

### b. Racing Limited

Racing Limited is a holding company that owns the sole membership interest in Racing USA, but the entities are wholly distinct and separately managed. Limited Dec. ¶¶3-19, Ex. "A." Racing Limited is a foreign entity formed in Cyprus (*id.* at ¶3); its registered agent is in Cyprus and it files its own tax returns in the U.S. and Cyprus (*id.* at ¶¶4, 6); it maintains its own financial

records (*id.* at ¶8); it does not comingle assets with Racing USA (*id.* at ¶20); it is not owned or operated by Mr. Al-Thani (*id.* at ¶9); and it has never employed the Plaintiffs (*id.* at ¶30).[10]

### c.    Speedtech

Speedtech provides nitrous fuel systems, technical advice, and tuning support for automotive racing. *See* Jenkins Dec. ¶5, Ex. "B." Speedtech is operated solely by Mr. Shannon Jenkins and its staff and has never employed the Plaintiffs (*id.* at ¶¶5-6, 29); Racing USA, its sole member, is not involved in its operation (*id.* at ¶¶4, 9-11); it files its own tax returns (*id.* at ¶10); it does not comingle assets with Racing USA (*id.* at ¶12); it is not owned, supervised, or managed by Mr. Al-Thani (*id.* at ¶13-17); and it has never employed any of the Plaintiffs in this action (*id.* at ¶29).

### d.    Performance

Performance is a North Carolina company. *See* Performance Dec. ¶14, Ex. "C." Mr. Greenbaum is its sole manager (*id*. at ¶2); it has never employed the Plaintiffs (*id.* at ¶21); it keeps its own corporate formalities (*id.* at ¶5); it does not comingle assets with Racing USA (*id.* at ¶7); and it is not owned or operated by Mr. Al-Thani (*id.* at ¶¶8-11).

### 2.    Plaintiffs Have Produced No Evidence that the Corporate Entities Have Ignored the Independence of their Separate Operations

Plaintiffs barely allege, much less produce any evidence that the Corporate Entities ignored the independence of their corporate forms. Plaintiffs' *alter ego* allegations are almost entirely directed to their relationship with Mr. Al-Thani, alleging that the Corporate Entities commingle assets with each other in few allegations. Compl. ¶¶36, 40. Plaintiffs cannot bootstrap their allegations regarding each entities' relationship with Mr. Al-Thani to establish *alter ego* jurisdiction amongst each other. The basis for jurisdiction over Racing Limited, Speedtech and

---

[10] Plaintiffs' attempt to buttress their jurisdictional arguments by alleging that "Al Anabi" trademark's registration, which is no longer active, as significant to the jurisdictional analysis—it is not. Compl. ¶¶86-87. Racing Limited's use of Racing USA's address for the registration does not rise to the level of continuous and systematic contacts with the forum. Particularly when any trademark registration is unrelated to Plaintiffs' claims. *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 857 (E.D. Va. 2000) (domain name registration agreement did not create a sufficient relationship to satisfy minimum contacts).

Performance must rise and fall based on allegations regarding the relationships as between those entities and Racing USA, and those allegations fail in this regard.

Plaintiffs cannot establish that the Corporate Entities have "ignored the independence of their separate operations." *First*, Plaintiffs have offered no evidence that Mr. Al-Thani is an employee, officer, or director of Racing USA, operates or manages Racing USA, or owns Racing USA. He does not. (Limited Dec. ¶¶21-24, Ex. "A" ). *Second*, there is no evidence that the Corporate Entities ignored their corporate independence amongst each other. In *Schaefer*, the court required the plaintiff to make a "prima facie showing" that a parent and subsidiary ignored the independence of their operations where "a shareholder in both [the parent and the subsidiary] and a former [officer of the subsidiary], stated that the two companies often conducted business 'as if the two companies were one' and commingled staff, sales, products, and personnel." *Schaefer*, 886 F. Supp. at 925. Plaintiffs fail to support the frivolous notion that the Corporate Entities ignored their separate corporate independence from each other or Mr. Al-Thani to fraudulently avoid liability.[11]

### 3.  Plaintiffs Have Produced No Evidence that the Corporate Entities' Structure Is Designed to Avoid Liability

There is no evidence that the Corporate Entities are fraudulently maintained to avoid liability. Fraudulent behavior under this factor "includes, without limitation, maintain[ing] the subsidiary to avoid a statutory responsibility, act[ing] in a blameworthy manner, loot[ing] the subsidiary, or so undercapitalizing the subsidiary that the latter could not reasonably have been expected to meet its obligations." *Schaefer*, 886 F. Supp. at 925-26. Nor is there any evidence that the Corporate Entities "loot" each other or otherwise subvert the policies of the FLSA by "reliance on the technicalities of the corporate form." *Compare id*. at 927 (finding that plaintiff established fraud on behalf of the parent where the parent company "exercised pervasive control over [the subsidiary] throughout the period at issue here," and the parent company was "now trying to

---

[11] The allegations regarding Mr. Al-Thani's unfettered control, etc. are similarly unsupported and contradicted by the evidence attached hereto. *See, e.g.*, *Onofri*, 2017 WL 6003052, at *8; *Schaefer*, 886 F. Supp. at 923-24.

withdraw, Oz-like" by transferring a vast majority of its assets out of its subsidiary company to avoid paying plaintiff in the event of a judgment). Plaintiffs hence fail to satisfy this factor because they have set forth no evidence to that effect. *United Electric*, 960 F.2d at 1094.

4. <u>Plaintiffs Fail to Demonstrate that a Manifest Injustice Would Occur if the Court Did Not Exert Jurisdiction over the Corporate Entities</u>

"Plaintiff must prove that manifest injustice will fall on the party in favor of veil piercing should the court uphold the corporate shield." *Schaefer*, 886 F. Supp. at 925. But Plaintiffs fail to even allege that injustice would occur were these entities dismissed. The Court in *Schaefer* found that the plaintiff would suffer manifest injustice, but the facts there are sharply different from those here. There, the plaintiff "proffered evidence" she worked at the related entities, whereas here, uncontroverted evidence establishes that Plaintiffs were never employees of Limited, Performance, or Speedtech. Limited Dec. ¶30, Ex. "A"; Performance Dec. ¶21, Ex. "C"; and Jenkins Dec. ¶29, Ex. "B." In fact, Plaintiffs were never employed by Racing USA. Limited Dec. ¶32, Ex. "A." But here, the Plaintiffs' hook, albeit improper, is Racing USA, the Massachusetts entity. Unlike *Schaefer*, where the plaintiff would have had to assert her claims against Australian entities, Plaintiffs here do not allege, much less provide evidence, that if Limited, Speedtech and Performance were dismissed, Plaintiffs would lose the ability to collect their alleged unpaid wages from Racing USA were they able to prevail on their claims.

Accordingly, upholding the corporate formalities between the entities in this case does not work an injustice on Plaintiffs.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6).

### A.   Legal Standard.

A complaint must "show[] that the pleader is entitled to relief" or face dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2), 12(b)(6). A complaint's factual allegations must be enough to raise a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss for failure to state a claim,

legal conclusions in the complaint are not accepted as true. *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011).

This Complaint is not only made up of vague and ambiguous allegations, but is the textbook shotgun pleading disfavored in this Circuit because the Corporate Entities cannot reasonably prepare a response. *U.S. ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc*., 713 F.3d 662, 664 (1st Cir. 2013). In *Currier v. Town of Gilmanton*, No. 18-CV-1204-LM, 2019 WL 3779580 (D.N.H. Aug. 12, 2019), the Court insightfully addressed the issue that this Court and the Defendants now face, when it dismissed a complaint very similar to Plaintiffs' and reasoned:

> Plaintiffs' claims fail to specify the factual predicates supporting each claim. The 'general allegations' section of the complaint—spanning 231 of the 291 numbered paragraphs—provides a meandering narrative account . . . But plaintiffs' statement of claims, contained in the final 49 paragraphs of the complaint, fails to specify which facts from the morass of the 'general allegations' support each separate claim for relief. Put simply, the complaint is a quintessential 'shotgun' pleading. . . . This problem often results when the pleader excessively incorporates by reference previous allegations into each count . . . This form of pleading puts the onus on the court to cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to that claim.

*Id*., at *3 (internal citations and quotations omitted).[12]

As further set forth below, this six plaintiffs and 799-paragraphs, barely comprehensible shotgun Complaint, without any mention of applicable law to any claim or plaintiff makes the 299-paragraph *Currier* complaint look concise by comparison.

**B.    Plaintiffs' FLSA Claims (Counts 1, 4) Fail to State a Claim.**

1.    <u>Plaintiffs Lack Standing to Assert FLSA Claims</u>

Plaintiffs lack standing to assert a claim under the Fair Labor Standards Act ("FLSA") because they fail to allege the existence of an employment relationship between the Corporate

---

[12] *See also Sandoval v. Milyard*, No. CIV.A. 09-CV-01097 B, 2009 WL 1851033, at *1–2 (D. Colo. June 25, 2009) ("Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8. In order for [Plaintiff] "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated[.]").

Entities and any named Plaintiff. "The existence of the FLSA cause of action . . . is dependent on a threshold finding that Plaintiffs are employees of Defendants. . ." *Hamilton v. Partners Healthcare Sys., Inc.,* 209 F. Supp. 3d 379, 389 (D. Mass. 2016), *aff'd,* 879 F.3d 407 (1st Cir. 2018). Indeed, "Plaintiffs' *actual and direct employer* is an essential element." *Id.* (citation omitted).

Plaintiffs do not allege their direct employer; instead, Plaintiffs allege that Corporate Entities and Mr. Al-Thani were Plaintiffs' "employer and employed Plaintiffs individually and jointly." *See* Compl. ¶¶16, 45. This is not sufficient. Before any joint employer or integrated enterprise may be presumed, "some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible." *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 9-10 (1st Cir. 2012) (Plaintiffs' failure to identify their direct employer required dismissal of FLSA claims).

Plaintiffs' allegations that *all* Defendants were "alter-egos" of Mr. Al-Thani, all operating under the "Al Anabi umbrella," with the "same officers, directors, presidents, and organizers," and internal management and assets are equally insufficient. Compl. ¶¶36-40. In *Hamilton*, plaintiffs asserted FLSA claims alleging that "defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other," and they were "related organizations through . . . common membership governing bodies, trustees and/or officers and benefit plans" and that they had "centralized supply chain management, financial, computer, payroll and health records systems…," human resources *and* "share[d] common management, including oversight and management by a senior management team…" 209 F. Supp. 3d at 389-90. The Court dismissed the FLSA claims on standing grounds as they failed to identify a direct employer. *Id.*

As in *Hamilton*, Plaintiffs' vague and conclusory allegations of alter ego relationships do not remedy their failure to identify their actual direct employer. The Corporate Entities are left guessing which officer/manager is part of which entity, what assets are inappropriately owned or jointly owned, what corporate or management functions are inappropriately merged, and how such renders any defendant a direct employer. Counts 1 and 4 are hence inadequately pled.

16

2.     Plaintiffs' FLSA Claims Are Time-Barred

Even if an employment relationship was properly alleged, the claims fail on a wholly independent ground as they fail to allege violations within the applicable statute of limitations. Under the FLSA, an action for unpaid wages and damages must "be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years . . ." 29 U.S.C. § 255. Also, courts consistently hold that retaliation claims under FLSA § 215(a)(3) are also subject to the same limitations period of 29 U.S.C. § 255. *Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 938 F.2d 797, 800 (7th Cir. 1991).

Plaintiffs have not alleged sufficient facts to demonstrate that any unpaid wage violations actually occurred within the statute of limitations period. This fact alone warrants dismissal of Plaintiffs' claims. *Guardia v. Clinical & Support Options, Inc.*, 25 F. Supp. 3d 152, 159 (D. Mass. 2014). Likewise, allegations of unpaid overtime pay must be specific as to when the overtime was worked such that the court can determine whether it has been timely asserted. *Gould v. First Student Mgmt., LLC*, No. 16-cv-359-PB, 2017 WL 3731025, at *6 (D.N.H. Aug. 29, 2017).

Plaintiffs' lawsuit was filed on June 16, 2020. As set forth below, Plaintiffs' FLSA claims are either time barred in their entirety (Smith and Allende) or are severely limited (Hope, Tohme and Pittard), as Plaintiffs concede that the vast majority of their respective employment occurred well before June 16, 2018, the applicable two-year limitations period:

- Smith alleges his last date of employment with Defendants occurred in July 2016, Compl. ¶142, a full two years outside to the statute of limitations period.
- Hope alleges his last date of employment with Defendants was July 2018, Compl. ¶232, with no allegation that any unpaid wage violations occurred in the final weeks of his alleged employment; instead, opting for blanket statements about his working hours in general. *See, e.g.*, Compl. ¶244 (alleging that he "was subject to long working hours, ranging from fifty (50) to one hundred (100) hours per week").
- Tohme alleges his last date of employment was on June 30, 2018, Compl. ¶369. He also alleges only generally that he worked long hours. *See, e.g.*, Compl. ¶382 ("There were periods of time, on at least five occasions, where Plaintiff Tohme worked for 20 to 36 hours straight, with no opportunity for sleep."). He does not identify any of these occasions by date.

17

- <u>Pittard</u> alleges his last date of employment occurred on July 10, 2018, Compl. ¶435. He too only alleges he worked long hours. *See, e.g.*, Compl. ¶449 (he "consistently worked in excess of forty (40) hours per week but was not paid overtime").
- <u>Allende</u> admits his last date of employment was February 4, 2018, Compl. ¶494, with no allegation that any adverse employment action occurred within two years before filing this complaint. Given his claim that he was injured in December 2017, there are no facts to suggest that Allende performed any work after December 2017.

Smith and Allende cannot bring FLSA claims because their alleged employment terminated more than two years prior to filing the complaint, and Hope, Tohme, and Pittard's FLSA unpaid overtime claims are time barred because, although roughly two weeks of their respective work purportedly fell within the limitations period, they fail to allege they worked—and were not paid for—overtime wages within those respective final weeks.

Plaintiffs' allegations also fail on the three-year "willful" exception under the FLSA. The only willful allegation is that Defendants "were aware, or should have been aware, that the practices . . . were, and are, unlawful" (Compl. ¶647), a mere recitation and conclusion of law that cannot substitute for the required allegation providing the defendants with suitable notice. *Guardia*, 25 F. Supp. 3d at 159 (declining to apply 3-year statute of limitations). When it is apparent from the face of the Complaint that the claims are time barred, as they are here, dismissal is proper. *Holder v. Bos. Police Dep't*, No. CV 20-10656-RGS, 2020 WL 2747855, at *2 (D. Mass. May 27, 2020) (Stearns, J.).

### C. **Plaintiffs Fail to State an FLSA Unpaid Overtime or Retaliation Claim.**

#### 1. Unpaid Overtime Compensation Claims

To state a claim for unpaid overtime under the FLSA, Plaintiffs must allege "(1) they were employed by [Defendants]; (2) their work involved interstate activity; and (3) they performed work for which they were under-compensated." *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012). *First*, Plaintiffs fail to satisfy the first prong of this analysis, *i.e.*, having failed to sufficiently identify their direct employer. *Hamilton*, 209 F. Supp. 3d at 393. Plaintiffs also fail to satisfy the third prong, as they only allege they "consistently worked in excess of forty (40) hours per week but w[ere] not paid overtime . . . with minimal meal breaks." *See* Compl. ¶¶449, 501, 535, 631.

These allegations are insufficient. *Pruell*, 678 F.3d at 13-14 (allegation that plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" was "little more than a paraphrase of the statute" and did not state a FLSA claim).

*Finally*, Plaintiffs fail to establish FLSA's overtime provisions even apply to them. There are no allegations as to if they were employed as non-exempt, hourly employees as opposed to salaried exempt employees, independent contractors, or in other capacities exempt from FLSA's requirements. If Plaintiffs were exempt from FLSA's overtime provisions, the number of worked hours worked is immaterial, rendering their claims insufficient.

### 2. Hope, Pittard and Allende Fail to Plead FLSA Retaliation

"The FLSA prohibits an employer from 'discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter.'" *Yayo v. Museum of Fine Arts,* No. CIV.A. 13-11318-RGS, 2014 WL 2895447, at *5-6 (D. Mass. June 26, 2014) (quoting 29 U.S.C. § 215(a)(3)). To state a FLSA retaliation claim, a plaintiff must make "at a minimum, a showing that (1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity." *Blackie v. State of Me.,* 75 F.3d 716, 722–23 (1st Cir.1996). To be actionable, "the record must enable the trier plausibly to find that a causal connection existed *between the protected conduct and the adverse action.*" *Id*. (emphasis in original).

Hope, Pittard, and Allende fail to sufficiently allege any one of the elements as they do not allege they engaged in any "statutorily protected activity," and, thus, cannot allege they were subjected to an adverse employment action as a result of that activity. *Cf. Joyce v. Upper Crust, LLC*, No. CIV.A. 10-12204-DJC, 2012 WL 3028459, at *3 (D. Mass. July 25, 2012).

Hope, Pittard, and Allende allege no fact even suggesting any of them engaged in statutorily protected activity under the FLSA. Hope and Pittard's allegation they were terminated for refusing to engage in criminal activity, and Allende's that he was terminated for requesting a day off from work, Compl. ¶¶663, 660, 666, even if true—which they are not— do not give rise

to a retaliation claim because the triggering termination event was not protected under the FLSA. *Williams v. United Tech.*, No. 12-10294-RGS, 2013 WL 1681895, at *2-3 (D. Mass. Apr. 12, 2013) (Stearns, J.) (employee's angry response of throwing away piece of paper in employer's presence did not amount to "protected activity.").

Even if the alleged activities were statutorily protected under the FLSA—which they are not—Plaintiffs have not sufficiently alleged that their termination of employment was a direct result of the statutorily protected activity. Further, the timing of their alleged terminations belies the claim that these purported terminations were causally related to any alleged retaliation. Hope alleges that he refused Mr. Al-Thani's request to murder someone in November 2017 and was terminated in July 2018 (Compl. ¶¶297, 232, 304). Pittard alleges that he also refused a request by Mr. Al-Thani to murder a couple in September 2017 (Compl. ¶¶456-457), but was terminated in July 2018, *nearly a year* after his alleged refusal (Compl. ¶435). Finally, Allende's retaliation claim is that he harmed himself while fleeing Mr. Al-Thani's property in Qatar in December 2017 (Compl. ¶¶508, 516-517) and was fired on February 4, 2018—*two months* later. *See* Compl. ¶518.

Even accepting all allegations as true, the Plaintiffs have failed to establish causation given the lack of temporal proximity between the alleged motivating acts and the purported terminations, any fact connecting the termination to the claimed acts. Because of this failure, Plaintiffs' retaliation claims must be dismissed.

### D. Pittard, Tohme, Allende and Mollenbrink Fail to State a Claim for Unpaid Overtime Wages under California and Florida Law (Counts 2, 3).

In order to state a claim under California Labor Code § 510, Plaintiffs must prove (1) that they performed work for the Defendants; (2) that they were entitled to and worked overtime; (3) that Defendants knew or should have known that Plaintiffs had worked overtime; (4) that they were not paid for some or all of the overtime worked; and (5) the amount of overtime pay owed. *Anderson v. Equinox Holdings, Inc.*, No. 2-18-cv-03759-SVW-RAO, 2019 WL 77139, at *3 (C.D. Cal. Jan. 2, 2019). Plaintiffs have failed to allege any facts establishing that they were directly, jointly or otherwise "employed" by any of the Defendants. *Futrell v. Payday Cal., Inc.*, 190 Cal.

App.4th 1419, 1430 (Ct. App. 2010). Furthermore, Plaintiffs cannot state a claim under § 510 where a vast majority of their work was performed outside of California.[13] Last, as discussed in Section III.C.1., *supra*, Plaintiffs' claims fail for the same reasons—they do not sufficiently plead facts to show they were even entitled to overtime pay from any Defendant.[14]

Pittard's claim for unpaid overtime under Fla. Stat. § 448.01 also fails because the statute has been declared unconstitutionally vague. *See, e.g.*, *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313 (S.D. Fla. 2006).

### E.   Pittard's Fla. Stat. § 448.102 Claim for Retaliation (Count 5) Fails to State a Claim.

Fla. Stat. § 448.102 provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." To prove a *prima facie* case under this provision, Pittard must establish that: "(1)[] he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity." *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005).

To establish a causal connection, Pittard must show that his employer was aware of the statutorily protected conduct, and it was not wholly unrelated to the adverse action, none of which is alleged here. "[W]here 'there is no other evidence tending to show causation, the temporal proximity must be 'very close,'" *Thomas v. Tyco Int'l Mgmt. Co., LLC*, 416 F. Supp. 3d 1340, 1363-64 (S.D. Fla. 2019) (citations omitted), less than two or three months. *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004). Pittard concedes that his employment was not terminated until July 2018, *nearly a year* after his alleged refusal to engage in criminal activity. Compl. ¶457. This alone requires dismissal under Fla. Stat. §448.102.

---

[13] *See* Section III.I., *infra* (citing *Ward v. United Airlines, Inc.*, No. S248702, 2020 WL 3495310, at *14 (Cal. June 29, 2020) (holding that "the Legislature ordinarily does not intend for its enactments to create conflicts with other sovereigns.").

[14] Moreover, Plaintiffs' claims under § 510 (and Pittard's claim under Fla. Stat. § 448.01) are preempted by the FLSA, and thus must be dismissed. *See, e.g.*, *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 55 (1st Cir. 2014) (FLSA preempts state law claims because they conflict with the "FLSA's comprehensive remedial scheme.").

**F.      Allende's C.L.C. § 1102.5 Claim for Retaliation (Count 6) Fails to State a Claim.**

California Labor Code § 1102.5 prohibits retaliation against any employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, or to a superior in the employer's entity, so long as the employee has reasonable cause to believe that the information discloses a violation of law or regulation. *See* C.L.C. § 1102.5. Section 1102.5 claims "are governed by the one-year statute of limitations." *Terbeek v. Panda Rest. Grp., Inc.*, No. E059775, 2015 WL 1863046, at *4 (Cal. Ct. App. Apr. 22, 2015) (citing Code Civ. Proc. § 340(a) and C.L.C. § 1102.5(f) (providing a $10,000 *penalty* for each violation of the statute)).

Allende alleges that he was "employed as a paramedic by Defendants from approximately October 15, 2017, to February 4, 2018," Compl. ¶494, when his employment was "wrongfully terminat[ed]" in retaliation for asking for personal time off from work. Compl. ¶663. Allende's alleged claim under § 1102.5 began accruing as of February 4, 2018—the presumed date of the alleged retaliatory act—and was required to be asserted within one year. Allende did not assert his cause of action until June 2020, therefore his claim is time barred.

Even if Allende's claim was not time barred, he still fails to "identify what specific activity he or she refused to participate in and what specific statute, rule, or regulation would be violated by that activity." *Nejadian v. Cty. of L.A.*, 40 Cal. App.5th 703, 719 (Ct. App. 2019). Accordingly, his §1102.5 claim should be dismissed.

**G.      Hope's T.C.A. § 50-1-304 Retaliation Claim (Count 7) Fails to State a Claim.**

Tennessee's Public Protection Act, T.C.A. § 50-1-304(a) ("TPPA") provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." To prevail, "the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). "Illegal

activities" are defined as a "violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." § 50-1-304(c).

Hope's TPPA claim should be dismissed for two reasons. *First*, TPPA retaliation claims are subject to a one-year statute of limitations period, which begins to accrue after the alleged retaliatory practice ceases. *Stewart v. Memphis Hous. Auth.*, 287 F. Supp. 2d 853, 858 (W.D. Tenn. 2003) (citing Tenn. Code Ann. § 4-21-311). Hope alleges that he "was employed by Defendants from July 2008 to July 2018," Compl. ¶232, well beyond the one-year mark, barring his claim.

Even if Hope had timely asserted his TPPA claim, the claim fails because Hope fails to allege his termination occurred *solely* due to his alleged refusal to engage in unlawful activity. *See Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 859 (E.D. Tenn. 2013). Hope simply alleges that his employment was terminated as retaliation after he "refused to engage in criminal activity in violation of public policy at the request of Defendant Khalid." Compl. ¶666. However, Hope was not terminated until July 2018—nearly *one entire year* after his alleged refusal to engage in unlawful activity, Compl. ¶232, lacking the temporal relationship to allege TPPA causation.

Accordingly, Hope fails to state a TPPA claim, requiring dismissal.

### H.  Smith, Tohme and Mollenbrink's Breach of Contract Claims (Counts 8, 9, 10) Fail to State a Claim.

Smith asserts a cause of action for breach of contract under Tennessee law and Tohme and Mollenbrink assert causes of action for breach of contract under California law, all with respect to their alleged employment agreements with "Defendants."

Under California law, a plaintiff alleging breach of contract must show "(1) a contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff from the breach." *Instant Infosystems, Inc. v. Open Text, Inc.*, No. BC619405, 2017 WL 5652470, at *1 (Cal. Super. Ct. Sept. 27, 2017) (internal quotation and citation omitted). Tennessee law is analogous. *See ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Smith, Tohme, and Mollenbrink all fail to satisfy even the first of these prongs because they do not properly allege the existence of an employment agreement (oral or written) with any of the Corporate Entities. In an attempt to allege the existence of an employment agreement, Smith, Tohme and Mollenbrink rely on vague statements that they each had an "employment contract with Defendants," Compl. ¶¶669, 672, 675, or were "hired" or "employed" "by Defendants," Compl. ¶¶143, 373, 524.

This is insufficient under both California and Tennessee law. California law requires the terms of a written contract "be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference." *Spanish Inn, Inc. v. Nara Bank*, No. D066487, 2015 WL 1035418, at *5 (Cal. Ct. App. Mar. 6, 2015). In Tennessee, a cause of action for breach of contract must "clearly indicate [] the material terms" of the agreement. *Setzer v. First Choice Lending Servs., LLC*, No. 18-5192, 2018 WL 7500477, at *4 (6th Cir. Sept. 10, 2018).

Smith, Tohme and Mollenbrink do not identify necessary terms of their alleged employment contracts (including who they entered into the contracts with) nor attach them to the complaint. Without more, Smith, Tohme and Mollenbrink cannot maintain their causes of action for breach of contract.[15] The claims should be dismissed on this basis alone.

Even if an enforceable agreement were sufficiently alleged, Plaintiffs fail to allege whom their employment agreements were with. Under California and Tennessee law, a breach of contract claim may only be asserted against a signatory to the contract or a third-party beneficiary. *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App.4th 1004, 1021–22 (Ct. App. 2009); *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 68 (Tenn. 2001). The Complaint fatally fails to allege either circumstance.

---

[15] Breach of contract claims based on oral contracts in California are subject to a two-year statute of limitations, whereas claims based on written contracts are subject to longer period. Cal. Civ. Code §§ 337, 339. Neither the Court nor Defendants can determine the statute of limitations applicable based on the current allegations.

**I.**     **Tohme, Allende And Mollenbrink's Claims under C.L.C. § 226 for Failure to Provide Wage Statements (Count 14) Fail to State a Claim.**

Tohme, Allende and Mollenbrink seek statutory penalties under California Labor Code, which requires that "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee" a written statement of wages including nine items. C.L.C. § 226(a). The statute of limitations for a § 226(a) claim seeking statutory penalties against an employer for failure to provide complete and accurate wage statements is one year. *See Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App.5th 444, 468 (2019).

Tohme alleges he was employed "by Defendants from June of 2017 to June 30, 2018." Compl. ¶369. Allende alleges he was "employed as a paramedic by Defendants from approximately October 15, 2017, to February 4, 2018." Compl. ¶494. Mollenbrink alleges he was "employed as a licensed, registered nurse by Defendants from approximately May 2018 to March 2019." Compl. ¶522. All three Plaintiffs fail to assert claims within the one-year statute of limitations, thus making their claims time barred.

Even if they could sufficiently allege timely claims, they fail to state a claim under C.L.C. § 226(a) because they have not alleged they worked "the majority of the time in California," as required. *See Ward*, 2020 WL 3495310, at *14. Tohme alleges he "began his employment" in California, Compl. ¶370, but that he otherwise worked across the United States and abroad, Compl. ¶¶371-72. Allende also alleges that he "began his employment" in California, Compl. ¶495, but that his work required him to travel with Mr. Al-Thani, Compl. ¶498, and that, roughly 50 days after being hired, he relocated to Qatar, Compl. ¶499. Mollenbrink alleges he was hired as a result of a meeting in California, Compl. ¶523, but he fails to allege he specifically ever performed work in California. These are allegations are insufficient.

Plaintiffs also fail to plead sufficient facts to establish that they were not salaried exempt employees excluded from the total hours requirement under § 226(j) which provides that the total hours category is not required of salaried employees who are exempt from overtime. Plaintiffs' vague assertions that "Defendants failed to provide Plaintiffs with wage statements listing the

number of hours worked each week of employment with Defendants and the rate received for such hours," Compl. ¶688, ignores this subsection. This additional failure is fatal to their claims.

### J.    Pittard's Claims for Violations of the Florida Unfair and Deceptive Trade Practices Act (Counts 11 and 12) Fail to State a Claim.

Pittard alleges a cause of action under the Florida Deceptive and Unfair Trade Practices Act for Tortious Interference with Business Contract (Compl., Count 11) and for Tortious Interference with a Business Relationship (Compl., Count 12).

Pittard fails to state a cognizable claim under Florida's Unfair and Deceptive Trade Practices Act ("FDUPTA"). In order to assert a proper claim under FDUPTA, the alleged unfair and deceptive act must be based on activity that transpires within the territorial boundaries of Florida. *See Molinos Valle Del Cibao, C. Por A. vs. Lama*, No. 07-23066-CIV, 2008 WL 11333544, at *3 (S.D. Fla. Oct. 22, 2008) (finding that "that FDUPTA applies to 'unfair, deceptive and/or unconscionable *practices* which transpired within the territorial boundaries of [Florida] without limitation.'" (internal citation omitted).

The analysis should go no further as Pittard does not allege anything occurred in Florida. He also fails to plead the alleged harm to consumers required under FDUPTA. *See GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431-CIV, 2018 WL 1393790, at *21 (S.D. Fla. Jan. 26, 2018). Accordingly, Counts 11 and 12 should be dismissed as they fail to state a FDUPTA claim.

### K.    Plaintiffs' State-Law Tort Claims Against the Corporate Entities (Counts 13 And 16-27) Fail to State a Claim.

Plaintiffs include multiple tort claims (collectively the "Tort Counts"), haphazardly grouping all Defendants together as tortfeasors, including, presumably, the Corporate Entities. The stew of Tort Counts attempt, but fail, to allege, Personal Injury (Count 13)[16], Intentional and Negligent Infliction of Emotional Distress (Compl. Counts 16-17), False Imprisonment (Compl. Counts 18-22), and Assault and Battery (Compl. Counts 23-27) against the Corporate Entities.[17]

---

[16] Notably, there is no independent cause of action for "Personal Injury" under California law.

[17] Plaintiffs either fail to specify the law applicable to each of their claims, or they incorrectly assert that the law of their home state governs each of their claims. Massachusetts choice of law rules govern this analysis. *Davidson v. Cao*, 211 F. Supp. 2d 264, 273 (D. Mass. 2002). Under Massachusetts choice of law rules, courts employ a flexible

Plaintiffs' monolithic reference to "the Defendants" is fatal to their claims against the Corporate Entities.[18] Plaintiffs' conclusory and generalized allegations that Mr. Al-Thani is the *alter ego* of all the Corporate Entities also cannot remedy the pleading failures.

Plaintiffs do not allege a basis to find the Corporate Entities vicariously liable as a *respondeat superior* for any of the tort claims. For Count 13 (personal injury), Counts 16 and 17 (negligent and intentional infliction of emotion distress),[19] and Counts 18-27 (false imprisonment and assault and battery), Plaintiffs must allege that the alleged conduct occurred by an employee acting within the scope of his duties. *Int'l Broth. of Police Officers, Local 433 v. Mem'l Press, Inc.*, 575 N.E.2d 376, 378 (Mass. App. Ct. 1991) (holding that an employer cannot be held liable for the intentional conduct of an employee acting outside the scope of his employment). Plaintiffs fail to allege (aside from conclusory allegations) that Mr. Al-Thani was an employee, agent, or principal on behalf of the Corporate Entities. And even assuming that Mr. Al-Thani was an employee and was acting in that capacity for all the Corporate Entities at the same time, they do not plead that his conduct is the kind that he was hired or authorized to perform, that it occurred within the scope of his purported employment, or that the actions were motivated by a purpose to serve the Corporate Entities.[20] *See Doe v. Medeiros*, 266 F. Supp. 3d 479, 490 (D. Mass. 2017) (An employee's conduct falls within the scope of his employment if: (1) it is of the kind for which

---

approach where the most-significant-relationship test is taken into consideration as part of the analysis. *Id*. Here the actions relate to torts that allegedly occurred almost monolithically in Qatar.

[18] The monolithic use of "the Defendants" is a congenital defect sickening the entire Complaint, not just the Tort Counts discussed here. *S.E.C. v. Patel*, No. CIV. 07-CV-39-SM, 2009 WL 3151143, at *2 (D.N.H. Sept. 30, 2009) (granting dismissal of an SEC Complaint described as a "puzzle pleading" because "[t]he SEC's repeated references in the amended complaint to a 'collective effort,' *and its practice of collectively attributing actions or statements to groups of people, or simply to "the defendants*," are imprecise and make it difficult to understand just what is being claimed against each discrete defendant.").

[19] The Corporate Entities maintain that Plaintiffs are not employees and that Mr. Al-Thani is not an employee, principal, or agent of the Corporate Entities. If Plaintiffs were employees, their claim for negligent infliction of emotional distress would be barred by the exclusivity provision of the Workers' Compensation Act. *Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019, 1048 (D. Mass. 1995).

[20] Plaintiffs Tohme, Allende, and Mollenbrink attempt to bring their claims for intentional infliction of emotional distress under California law and Plaintiffs Smith and Hope under Tennessee law. Plaintiffs' unilateral choice of law does not coalesce with the locus of the alleged tort and completely disregards the forum's choice-of-law rules. It is likely that Qatari law would apply under Massachusetts choice-of-law rules. *See supra* note 17. Even using Plaintiffs' untethered choice of law, however, their claims would still be deficient because under both California and Tennessee law the elements for vicarious liability are similar to those under Massachusetts law.

he is hired to perform; (2) it occurs within the authorized time and space limits and (3) it was motivated, at least in part, by a purpose to serve the employer).

Plaintiffs have not alleged any nexus between the challenged conduct and the purpose of Mr. Al-Thani's purported employment or the Corporate Entities' interests. *See Connolly v. Roman Catholic Archbishop of Bos.*, No. 1782CV1126, 2019 WL 2402290, at *4 (Mass. Super. Ct. May 17, 2019). Moreover, if the employee's acts are driven by purely personal purposes, unconnected in any way with the employer's interests, then the employee is ordinarily acting outside the scope of his employment. *Kelly v. Middlesex Corp.*, 616 N.E.2d 473, 474 (Mass. App. Ct. 1993). Lastly, there are no allegations that the Corporate Entities took or condoned actions independent from those alleged against Mr. Al-Thani. The only other individual defendant, Mr. Greenbaum, is not alleged to have been involved in the commission of any of the tortious conduct, nor is any other alleged employee, agent, or principal of the Corporate Entities alleged to have committed tortious conduct under the Tort Counts.[21]

In sum, Plaintiffs do not plead that alleged tortious conduct was committed within the scope of duties related to any Corporate Entities, much less all the entities at the same time. Nor could they because the Corporate Entities are varied in their corporate purpose. Plaintiffs' allegations do not allege, let alone support, that Mr. Al-Thani committed every purported tort against every Plaintiffs while working within the scope of his duties for *every single Corporate Entity at the same time*. And Plaintiffs' *alter ego* allegations do not allow Plaintiffs to ignore the essential elements required to hold the Corporate Entities liable for any of the Tort Counts. Plaintiffs plainly confuse the concept of piercing the corporate veil to find that a corporation liable for a tortfeasor's damages and alleging a cause of action under *respondeat superior* for the acts of the corporation's

---

[21] Smith alleges that an employee of "Defendants" contacted Smith and threatened him. Compl. ¶¶230-231. However, there are no allegations that this alleged employee was acting within the scope of his employment when he contacted and threatened Smith. Consequently, this cannot be a basis for holding *all* of the Corporate Entities liable for this alleged conduct. *Int'l Broth. Of Police Officers, Local 433*, 575 N.E.2d at 378.

employees.[22] Because the Tort Counts all fail to allege the elements necessary for finding liability against the Corporate Entities under theories of vicarious liability, Counts 13 and 16 through 27, must be dismissed.

**L.      Plaintiffs Fail to State a Cause of Action for "Misrepresentation."**

Plaintiffs' Count 15, labeled simply as "Misrepresentation," tracks the elements of *intentional* misrepresentation. Again, as with the labor and Tort Counts, all Defendants are included as the perpetrators of the alleged intentional misrepresentation. Compl. ¶¶690-695. It is not plausible that every misrepresentation Mr. Al-Thani allegedly made was on behalf of all the Corporate Entities at the same time. Besides, intentional misrepresentation is considered a species of fraud and subject to Rule 9(b)'s heightened pleading requirements. *See Cabi v. Bos. Children's Hosp.*, 161 F. Supp. 3d 136, 163 (D. Mass. 2016) ("[T]he pleader usually is expected to specify the who, what, where, and when of the allegedly false ... representation."). Plaintiffs have failed to allege with the requisite specificity required by Rule 9(b) the four necessary elements: "(1) the defendant made a false misrepresentation of material fact; (2) the defendant acted with knowledge of its falsity; (3) the defendant acted with the purpose of inducing the plaintiff to act on the misrepresentation; and (4) the plaintiff relied on the misrepresentation to her detriment." *Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 341 (D. Mass. 2007).

Plaintiffs incorporate allegations 1-689 of the Complaint into their Misrepresentation Count without any attempt to comply with the specificity required by Rule 9(b). Even if the Corporate Entities could accurately identify the alleged misrepresentation, which they cannot, Plaintiffs do not plead how every Corporate Entity may be liable for every misrepresentation. Plaintiffs alone bear the burden under Rule 9(b) to identify the alleged representations that form

---

[22] Under the traditional veil piercing theory, a party seeks to pierce the corporate veil to hold an individual liable for the debts of the corporation. Here, Plaintiffs seek the rare-bird version of that theory—the reverse veil piercing where the corporation is liable for the debts of the individual. Massachusetts has few reported decisions where reverse veil piercing is allowed. *Shea v. Millett*, No. 17-CV-12233-ADB, 2019 WL 184074, at *3 (D. Mass. Jan. 14, 2019) (The Massachusetts Supreme Judicial Court "has never explicitly, or even inferentially, adopted reverse veil piercing in any form.").

part of *his* claim—"the who, what, where, and when of the allegedly false . . . representation." *Cabi*, 161 F. Supp. 3d at 163.

Plaintiffs' alleged employment also spanned varying years: Smith, from 2008 through 2016; Hope, from 2008 through 2018; Tohme, from 2017 through 2018; Pittard, from 2017 to 2018; and Allende, from 2017 through 2018. Each Plaintiff's allegations—nearly all the allegations in the Complaint—lack the specificity to establish the necessary elements underlying any fraud-related claim. Plaintiffs' generalized reference to "Defendants" fails because there is no connection between the representation and the actor who made it. These pleading failures are legion and neither the Corporate Entities nor this Court should be required hunt down Plaintiffs' possible allegations from this voluminous Complaint.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, with prejudice. Or, in the alternative, the Court should grant the Corporate Entities' request for a more definite statement.

Respectfully submitted,

**AL ANABI RACING USA, LLC**
**AL ANABI PERFORMANCE, LLC**
**AL ANABI RACING LIMITED**
**SPEEDTECH, LLC**

By its attorneys,


*/s/ Kenneth M. Bello*
Kenneth M. Bello, BBO#036630
John F. Welsh, BBO#522640
Justin L. Engel, BBO#683894
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
Tel: (617) 247-4100
Fax: (617) 247-4125
kbello@bellowelsh.com
jwelsh@bellowelsh.com
jengel@bellowelsh.com

/s/ *Javier Angel Reyes*
Javier Angel Reyes, Fla. Bar #688487
Armando Rosquete, Fla. Bar #648434
Bell Rosquete Reyes Esteban PLLC
999 Ponce de Leon Blvd. Suite 1120PH
Coral Gables, FL 33134
Tel: (305) 975-0818
Fax: (305) 570-1599
jreyes@brresq.com
arosquete@brresq.com
*Admitted pro hac vice*

Dated: August 14, 2020

## CERTIFICATE OF SERVICE

I, Kenneth M. Bello, counsel for Defendants Al Anabi Racing USA, LLC, Al Anabi Performance, LLC, Al Anabi Racing Limited and Speedtech, LLC, in the above-referenced matter, hereby certify that on August 14, 2020, I electronically filed the foregoing *Motion to Dismiss the Complaint for Improper Service, Lack of Personal Jurisdiction and Failure to State a Claim, and, Alternatively, Motion for More Definite Statement* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

/s/ *Kenneth M. Bello*
 Kenneth M. Bello

31