**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

ROBERT VON SMITH
TERRY HOPE
RAMEZ TOHME                                   **Civil Action No.:  1:20-cv-11143-DLC**
MATTHEW PITTARD
MATTHEW ALLENDE
JASON MOLLENBRINK,

      Plaintiffs,

              v.

HE SHEIKH KHALID BIN HAMAD
BIN KHALIFA AL THANI, *et al.*,

      Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KHALID BIN HAMAD
BIN KHALIFA AL THANI'S MOTION TO DISMISS FOR IMPROPER SERVICE (OR
TO QUASH SERVICE), LACK OF PERSONAL JURISDICTION AND FAILURE TO
STATE A CLAIM AND, ALTERNATIVELY, MOTION FOR MORE DEFINITE
<u>STATEMENT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BRIEF BACKGROUND ................................................................................................ 1

ARGUMENT .................................................................................................................. 3

I   The Court Lacks Personal Jurisdiction Over Mr. Al-Thani Because He Has Not Been Properly Served Under Rule 4(e) or (f) ............................................................. 3

   A.   Mr. Al-Thani Has Not Been Properly Served In Accordance with the Rules. ............ 3

      1.   Service of Process Did Not Comply with Massachusetts Law ............................... 3

      2.   Service of Process Did Not Comply with Delaware Law ...................................... 4

      3.   Service Fails to Comply with Rule 4(f) ................................................................ 5

II   The Court Does Not Have Personal Jurisdiction Over Mr. Al-Thani Because He Does Not Have Contact with Massachusetts ......................................................... 5

   A.   Applicable Jurisdictional Analysis and Burden of Proof ............................................ 5

   B.   Plaintiffs Fail to Meet Their Burden of Demonstrating Specific Jurisdiction Under the Massachusetts Long-Arm Statute ............................................................ 7

      1.   Plaintiffs Fail to Plead Specific Jurisdiction Under Mass. Gen. Law § 3(c) .......... 8

      2.   Plaintiffs Fail to Plead Specific Jurisdiction Under Mass. Gen. Law § 3(b) .......... 8

      3.   Plaintiffs Fail to Plead Specific Jurisdiction Under Mass. Gen. Law § 3(a) .......... 8

   C.   Plaintiffs Fail to Meet Their Burden of Demonstrating Specific Jurisdiction Under a Traditional Due Process Analysis .................................................................. 9

   D.   Plaintiffs Fail to Meet Their Burden of Demonstrating General Jurisdiction Under the Massachusetts Long-Arm Statute and a Due Process Analysis ................. 10

      1.   Plaintiffs Fail to Plead General Jurisdiction Under Mass. Gen. Law § 3(d) ........ 10

      2.   Plaintiffs Fail to Plead General Jurisdiction Under a Due Process Analysis ........ 10

   E.   Plaintiffs Fail to Meet Their Burden of Demonstrating that Mr. Al-Thani is the "Alter Ego" of Racing USA ..................................................................................... 11

      1.   Plaintiffs Have Produced No Evidence Mr. Al-Thani and Racing USA Have Ignored the Independence of their Separate Operations ............................. 12

      2.   Plaintiffs Have Produced No Evidence that Mr. Al-Thani Maintains or Operates Racing USA to Avoid Liability ............................................................ 13

      3.   Plaintiffs Fail to Demonstrate a Manifest Injustice Would Occur if Mr. Al-Thani Were Dismissed from this Case .............................................................. 14

   F.   Exercising Personal Jurisdiction Over Mr. Al-Thani Does Not Comport with Constitutional Due Process Requirements ................................................................ 14

III   Plaintiffs Fail to State a Claim Against Mr. Al-Thani .................................................. 16

A. Legal Standard ............................................................................ 16

B. Plaintiffs' FLSA Claims (Counts 1, 4) Fail to State a Claim...................................... 16

    1.  Plaintiffs' FLSA Claims Are Time-Barred............................................ 16

C. Plaintiffs Fail to State an FLSA Unpaid Overtime or Retaliation Claim .................. 18

    1.  Unpaid Overtime Compensation Claims ........................................... 18

    2.  Hope, Pittard and Allende Fail to Plead FLSA Retaliation ................................ 19

D. Pittard, Tohme, Allende and Mollenbrink Fail to State a Claim for Unpaid Overtime Wages under California and Florida Law (Counts 2, 3)............................ 20

E. Pittard's Fla. Stat. § 448.102 Retaliation Claim (Count 5) Fails to State a Claim............................................................................ 21

F. Allende's C.L.C. § 1102.5 Retaliation Claim (Count 6) Fails to State a Claim ......... 21

G. Hope's T.C.A. § 50-1-304 Retaliation Claim (Count 7) Fails to State a Claim ......... 22

H. Smith, Tohme and Mollenbrink's Breach of Contract Claims (Counts 8, 9, 10) Fail to State a Claim............................................ 23

I. Tohme, Allende and Mollenbrink's C.L.C. § 226 Claim for Failure to Provide Wage Statements (Count 14) Fail to State a Claim .................................... 24

J. Pittard's Claims for Violation of Florida's Unfair and Deceptive Trade Practices Act (Counts 11 and 12) Fail to State a Claim............................. 25

K. Plaintiffs' State-Law Tort Claims against Mr. Al-Thani (Counts 13 and 16-27) Fail to State a Claim................................................. 26

    1.  Allende and Hope's Tort Counts Are Time-Barred............................ 26

    2.  Smith Fails to State a Claim (Counts 16, 17) ..................................... 27

    3.  Allende, Tohme, Mollenbrink and Pittard's Tort Counts Must Be Dismissed on Presumption Against Extraterritorial Application of States' Laws......................................................................... 28

L. Plaintiffs Fail to State a Cause of Action for "Misrepresentation"............................ 28

M. Plaintiffs' Civil RICO Claims Must Be Dismissed ................................................. 30

CONCLUSION............................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Adelson v. Hananel*,
   510 F.3d 43 (1st Cir. 2007) ........................................................................7, 14, 15

*Am. Online, Inc. v. Huang*,
   106 F. Supp. 2d 848 (E.D. Va. 2000) ...................................................................11

*Anderson v. Equinox Holdings, Inc.*,
   No. 2-18-cv-03759-SVW-RAO, 2019 WL 77139 (C.D. Cal. Jan. 2, 2019)...........................20

*ARC LifeMed, Inc. v. AMC-Tenn., Inc.*,
   183 S.W.3d 1 (Tenn. Ct. App. 2005) ....................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................16

*Blackie v. State of Me.*,
   75 F.3d 716 (1st Cir.1996) ...........................................................................19

*Bluetarp Fin., Inc. v. Matrix Co.*,
   709 F.3d 72 (1st Cir. 2013) ..........................................................................7

*Boehner v. McDermott*,
   332 F. Supp. 2d 149 (D.D.C. 2004) .....................................................................28

*Cabi v. Bos. Children's Hosp.*,
   161 F. Supp. 3d 136 (D. Mass. 2016) ...................................................................28

*Chase v. White*,
   No. 3:16-cv-01576, 2016 WL 7210155 (M.D. Tenn. Dec. 13, 2016) ....................................27

*Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*,
   938 F.2d 797 (7th Cir. 1991) .........................................................................17

*Cunningham v. Ardrox, Inc.*,
   663 N.E.2d 577 (Mass. App. Ct. 1996) ..................................................................9

*Currier v. Town of Gilmanton*,
   No. 18-CV-1204-LM, 2019 WL 3779580 (D.N.H. Aug. 12, 2019).......................................16

*Davis v. Covenant Presbyterian Church*,
   No. M2013-02273-COA-R3-CV, 2014 WL 2895898 (Tenn. Ct. App. June 23,
   2014) .............................................................................................27

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
290 F.3d 42 (1st Cir. 2002) ................................................................................. 5

*Donnelly v. UMass Corr. Med. Program*,
No. 09-cv-11995-RGS, 2010 WL 1924700 (D. Mass. May 11, 2010) .................................... 4

*Droukas v. Divers Training Academy, Inc.*,
376 N.E.2d 548 (Mass. 1978) ............................................................................... 8

*Edlow v. RBW, LLC*,
No. CIV A 09-12133-RGS, 2010 WL 2034772 (D. Mass. May 21, 2010)
(Stearns, J.), *aff'd*, 688 F.3d 26 (1st Cir. 2012) ...................................................... 30

*U.S. ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*,
713 F.3d 662 (1st Cir. 2013) ............................................................................. 16

*Fournier v. Best W. Treasure Is. Resort*,
926 F.2d 126 (1st Cir. 1992) .............................................................................. 9

*Franklin v. Swift Transp. Co.*,
210 S.W.3d 521 (Tenn. Ct. App. 2006) .................................................................... 22

*Futrell v. Payday Cal., Inc.*,
190 Cal. App.4th 1419 (Ct. App. 2010) ................................................................... 20

*GolTV, Inc. v. Fox Sports Latin Am., Ltd.*,
16-24431-CIV, 2018 WL 1393790 (S.D. Fla. Jan. 26, 2018) ............................................... 26

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................................................................................... 6

*Gould v. First Student Mgmt., LLC*,
No. 16-cv-359-PB, 2017 WL 3731025 (D.N.H. Aug. 29, 2017) ...................................... *passim*

*Guardia v. Clinical & Support Options, Inc.*,
25 F. Supp. 3d 152 (D. Mass. 2014) .................................................................. 17, 18

*Higdon v. Jackson*,
393 F.3d 1211 (11th Cir. 2004) .......................................................................... 21

*Hopkins v. Yi*,
2019 WL 3547085 (D. Mass. May 31, 2019) ................................................................. 7

*Instant Infosystems, Inc. v. Open Text, Inc.*,
No. BC619405, 2017 WL 5652470 (Cal. Super. Ct. Sept. 27, 2017) ....................................... 23

*Int'l Floor Crafts, Inc. v. Adams*,
477 F. Supp. 2d 336 (D. Mass. 2007) ..................................................................... 28

*Jackson v. City of Cleveland*,
  No. E2015-01279-COA-R3-CV, 2016 WL 4443535 (Tenn. Ct. App. Aug. 22,
  2016) ........................................................................................................................27

*Joyce v. Upper Crust, LLC*,
  No. CIV.A. 10-12204-DJC, 2012 WL 3028459 (D. Mass. July 25, 2012) ...........................19

*Kolikof v. Samuelson*,
  488 F. Supp. 881 (D. Mass. 1980) ........................................................................................8

*Levan v. Sears, Roebuck & Co.*,
  984 F. Supp. 2d 855 (E.D. Tenn. 2013)................................................................................23

*Lopes v. Fremont Freewheelers*,
  No. C 07-6213 PJH, 2008 WL 3304944 (N.D. Cal. Aug. 7, 2008)........................................26

*Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*,
  132 F.3d 111 (1st Cir. 1997) ................................................................................................9

*M-R Logistics, LLC v. Riverside Rail, LLC*,
  537 F. Supp. 2d 269 (D. Mass. 2008) ..................................................................................11

*Magney v. Cty. of Humboldt*,
  No. 17-cv-02389-HSG, 2018 WL 1156817 (N.D. Cal. Mar. 5, 2018) ...................................26

*Manning v. Bos. Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2014)............................................................................................20, 29

*Mass. Sch. of Law at Androver v. Am. Bar Ass'n*,
  142 F.3d 26 (1st Cir. 1998) ................................................................................................9

*Molinos Valle Del Cibao, C. Por A. vs. Lama*,
  No. 07-23066-CIV, 2008 WL 11333544, (S.D. Fla. Oct. 22, 2008) ......................................25

*Naranjo v. Spectrum Sec. Servs., Inc.*,
  40 Cal. App.5th 444 (Ct. App. 2019).....................................................................................24

*Nejadian v. Cty. of L.A.*,
  40 Cal. App.5th 703 (Ct. App. 2019).....................................................................................22

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987).................................................................................................................3

*Owner-Operator Indep. Drivers Ass'n v. Concord Efs*,
  59 S.W.3d 63 (Tenn. 2001)....................................................................................................24

*Peñalbert–Rosa v. Fortuño–Burset*,
  631 F.3d 592 (1st Cir. 2011) ................................................................................................16

*Pettengill v. Curtis*,
    584 F. Supp. 2d 348 (D. Mass. 2008) ................................................................. 11

*Pike v. Clinton Fishpacking, Inc.*,
    143 F. Supp. 2d 162 (D. Mass. 2001) ............................................................ 6, 7, 9

*Pittard et al. v. H.E. Sheikh Khalid Bin Hamad Bin Khalifa Al Thani, et al.*,
    No. 8:19-cv-01784-TPB-AAS ...................................................................... 2, 17, 29

*Posely v. Eckerd Corp.*,
    433 F. Supp. 2d 1287 (S.D. Fla. 2006) ............................................................... 21

*Pruell v. Caritas Christi*,
    678 F.3d 10 (1st Cir. 2012) ............................................................................... 18

*Robles v. Agreserves, Inc.*,
    158 F. Supp. 3d 952 (E.D. Cal. 2016) ................................................................ 27

*Schaefer v. Cybergraphic Sys., Inc.*,
    886 F. Supp. 921 (D. Mass. 1994) ......................................................... 11, 13, 14

*Setzer v. First Choice Lending Servs., LLC*,
    No. 18-5192, 2018 WL 7500477 (6th Cir. Sept. 10, 2018) ................................. 24

*Spanish Inn, Inc. v. Nara Bank*,
    No. D066487, 2015 WL 1035418 (Cal. Ct. App. Mar. 6, 2015) .......................... 24

*Spinks v. Equity Residential Briarwood Apartments*,
    171 Cal. App.4th 1004 (Ct. App. 2009) .............................................................. 24

*Stewart v. Memphis Hous. Auth.*,
    287 F. Supp. 2d 853 (W.D. Tenn. 2003) ............................................................ 22

*Stolzoff v. Waste Sys. Int'l, Inc.*,
    792 N.E.2d 1031 (Mass. App. Ct. 2003) ............................................................ 29

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) ................................................................................... 28

*Swartz v. Bahr*,
    No. 16-12144-LTS, 2017 WL 2695290 (D. Mass. June 22, 2017) ........................ 4

*Terbeek v. Panda Rest. Grp., Inc.*,
    No. E059775, 2015 WL 1863046 (Cal. Ct. App. Apr. 22, 2015) .......................... 22

*Thomas v. Tyco Int'l Mgmt. Co., LLC*,
    416 F. Supp. 3d 1340 (S.D. Fla. 2019) ............................................................... 21

*Trask v. Serv. Merch. Co., Inc.,*
  135 F.R.D. 17 (D. Mass. 1991) ........................................................................5

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,*
  960 F.2d 1080 (1st Cir. 1992) ......................................................11, 12, 13, 14

*Ward v. United Airlines, Inc.,*
  No. S248702, 2020 WL 3495310 (Cal. June 29, 2020)...........................20, 25

*White v. Purdue Pharma, Inc.,*
  369 F. Supp. 2d 1335 (M.D. Fla. 2005) ...........................................................21

*Williams v. United Tech.,*
  No. 12-10294-RGS, 2013 WL 1681895 (D. Mass. Apr. 12, 2013) (Stearns, J.)....................19

*World Depot Corp. v. Onofri,*
  No. 16-12439-FDS, 2017 WL 6003052 (D. Mass. Dec. 4, 2017) ................................. *passim*

*Yayo v. Museum of Fine Arts,*
  No. CIV.A. 13-11318-RGS, 2014 WL 2895447 (D. Mass. June 26, 2014) ...........................19

*Zuckerman v. McDonald's Corp.,*
  35 F. Supp. 2d 135 (1st Cir. 1999).................................................................30

## Constitutions

United States Constitution,
  Amendment 5 .......................................................................................6
  Amendment 14 ......................................................................................6

## Statutes and Codes

United States Code,
  Title 29, Section 215(a)(3) ....................................................................17, 19
  Title 29, section 255............................................................................17

California Civil Code,
  Section 337.......................................................................................24
  Section 339.......................................................................................24

California Code of Civil Procedure,
  Section 340(a) ...................................................................................22

California Labor Code,
    Section 226.................................................................................................................24
    Section 226(a)......................................................................................................24, 25
    Section 226(j)..........................................................................................................25
    Section 510..............................................................................................................20
    Section 1102.5....................................................................................................21, 22
    Section 1102.5(f)....................................................................................................22

Florida Statutes,
    Section 448.01....................................................................................................20, 21
    Section 448.102.......................................................................................................21

Massachusetts General Laws,
    Chapter 223A, Section 3(a)......................................................................................8
    Chapter 223A, section 3(a)-(d).................................................................................7
    Chapter 223A, section 3(b)......................................................................................8
    Chapter 223A, section 3(c)......................................................................................8
    Chapter 223A, section 3(d)..................................................................................7, 10

Tennessee Code Annotated,
    Section 4-21-311.....................................................................................................22
    Section 28-3-104(a)(1)(A).......................................................................................27
    Section 50-1-304.....................................................................................................22
    Section 50-1-304(a)............................................................................................22, 23
    Section 50-1-304(c).................................................................................................22

## Rules and Regulations

Delaware Superior Court Rules of Civil Procedure,
    Rule 4(f)(1)(I) ...........................................................................................................5

Federal Rules of Civil Procedure,
    Rule 4(e)................................................................................................................1, 3
    Rule 4(f)....................................................................................................................5
    Rule 4(f)(1)...............................................................................................................5
    Rule 8(a)(2)............................................................................................................16
    Rule 9(b) ...........................................................................................................28, 29
    Rule 12(b)(2)............................................................................................................1
    Rule 12(b)(5)............................................................................................................1
    Rule 12(b)(6).......................................................................................................1, 16
    Rule 12(e)................................................................................................................1

Massachusetts Rules of Civil Procedure,
    Rule 4(e)..........................................................................................................3, 4, 5

Defendant Khalid Bin Hamad Bin Khalifa Al Thani ("Mr. Al-Thani") respectfully submits this Memorandum in Support of his Motion To Dismiss Plaintiffs' Complaint (the "Complaint") pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure for Lack of Personal Jurisdiction and Insufficient Service of Process, or in the Alternative, to Quash Service of Process, and for Failure to State a Claim as to Counts One through Twenty-Nine. Alternatively, Mr. Al-Thani seeks a more definite statement under Fed. R. Civ. P. 12(e).

## INTRODUCTION[1]

Plaintiffs' shotgun-pleading should be dismissed on three independent grounds.

First: Improper Service under FRCP 12(b)(5). Mr. Al-Thani is a foreign citizen and service therefore must be effected pursuant to FRCP 4(e) or 4(f). Plaintiffs ignored these rules by serving the registered agent for Al Anabi Racing USA, LLC ("Racing USA") and Speedtech, LLC ("Speedtech"), companies neither owned nor controlled by Mr. Al-Thani. Hence, the Court should dismiss the Complaint or quash service of process, as such service does not constitute actual notice.

Second: Lack of Personal Jurisdiction under FRCP 12(b)(2). Mr. Al-Thani is a foreign resident and lacks sufficient contacts to be hailed into a Massachusetts court. The Complaint sets forth no allegation emanating from Mr. Al-Thani's contacts with or conduct in Massachusetts. No Plaintiff alleges an injury in Massachusetts. Plaintiffs assert alter ego allegations in an attempt to link Mr. Al-Thani to Massachusetts domiciliary-Racing USA, but without any basis. Hence, the Court should dismiss the Complaint for lack of personal jurisdiction over Mr. Al-Thani.

Third: Failure to State a Claim under FRCP 12(b)(6). Separate from the failure of service and jurisdiction, many of Plaintiffs' claims are time-barred, or otherwise insufficiently pled. Hence, the Court should dismiss the Complaint for failure to state a claim. In the alternative, the Court should grant Mr. Al-Thani's request for a more definite statement pursuant to FRCP 12(e).

## BRIEF BACKGROUND

After an unsuccessful bid to improperly effect service of process on Mr. Al-Thani in a prior action before the Middle District of Florida, Plaintiffs now come to this Court seeking to do the

---

[1] All emphasis herein is added unless otherwise noted.

1

same. The only difference: this time, there are four more plaintiffs, several more defendants, and a Complaint replete with irrelevant and inflammatory allegations. On June 16, 2020, Plaintiffs Robert Von Smith, Terry Hope, Ramez Tohme, Matthew Pittard, Matthew Allende, and Jason Mollenbrink ("Plaintiffs") filed their Complaint with this Court alleging violations of the Fair Labor Standards Act ("FLSA"), various Florida, Tennessee and California laws, and the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Despite its 134 pages, Plaintiffs do not assert a single cause of action in the Complaint arising under Massachusetts law.

A Qatari citizen, Mr. Al-Thani has never lived or worked in Massachusetts. Yet, Plaintiffs have not tried to lawfully serve him. Instead, on June 17, 2020, Plaintiffs simply added a copy of the Summons and Complaint for Mr. Al-Thani in the papers they served at CT Corporation's ("CT Corp.") Wilmington, Delaware office for Racing USA and Speedtech, which Mr. Donald Greenbaum ("Mr. Greenbaum"), the Manager of Racing USA, received at his office. (Dkt. No. 52-1, ¶33). The Summons was sent to Racing USA by CT Corp., the company's registered agent. *Id.*, ¶34. Speedtech also received a copy of the Summons and Complaint addressed to Mr. Al-Thani. (Dkt. No. 52-2, ¶19). The Summons was sent to Speedtech by CT Corp., the company's registered agent. *Id.*, ¶20. However, CT Corp. has never been Mr. Al-Thani's registered agent for service and has no legal relationship with him, rendering service through CT Corp. improper.  *See Pittard et al. v. H.E. Sheikh Khalid Bin Hamad Bin Khalifa Al Thani, et al.*, No. 8:19-cv-01784-TPB-AAS, Hickman Aff. in Supp. of Defs.' Motion to Dismiss, ECF No. 24-1, ¶¶4-6 (M.D. Fla. Jan. 2, 2020).

The 799-paragraph-Complaint does not include *one word* of Mr. Al-Thani's ties to or contacts with Massachusetts. Not a single claim or cause of action against Mr. Al-Thani is alleged to have arisen out of his contacts with Massachusetts. That is because he is a citizen of Qatar whose domicile and primary residence is now, and was during the periods alleged in the Complaint, in Qatar. *See* Compl. ¶30. The Complaint does not allege that he has or ever had a domicile or residence in Massachusetts, nor does it allege that he committed any of the alleged acts giving rise to Plaintiffs' claims in Massachusetts.

In an unsubstantiated attempt to obtain personal jurisdiction, Plaintiffs simply claim that Racing USA is the "alter ego" of Mr. Al-Thani, and that serving Racing USA with process is thus the same as serving Mr. Al-Thani. To that end, Plaintiffs list a series of unsupported "facts," *i.e.*, that Mr. Al-Thani completely controls all Defendants, makes all relevant employment and management decisions for each Defendant, and otherwise directs, funds and oversees each Defendant's operations, *see generally*, Compl. ¶¶19, 36-43, 66, 72-100, 102, 106-118. Plaintiffs provide no support for these allegations because they are a fiction.

## ARGUMENT

**I**   **THE COURT LACKS PERSONAL JURISDICTION OVER MR. AL-THANI BECAUSE HE HAS NOT BEEN PROPERLY SERVED UNDER RULE 4(E) OR (F)**

**A.   Mr. Al-Thani Has Not Been Properly Served In Accordance with the Rules.**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987). Fed. R. Civ. Proc. 4(e) allows service of a Complaint to be effected in accordance with the laws of the state of the forum court, the laws of the state where service is effected, or by delivering a copy of the summons and of the Complaint to the individual, his agent, or leaving a copy of each at the individual's dwelling.

### 1.   Service of Process Did Not Comply with Massachusetts Law

Massachusetts law provides for personal service outside the state when made "(1) in any appropriate manner prescribed in subdivision (d) of this Rule; or (2) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction; or (3) by any form of mail addressed to the person to be served and requiring a signed receipt; or (4) as directed by the appropriate foreign authority in response to a letter rogatory; or (5) as directed by order of the court." *See* Mass. R. Civ. P. 4(e).

Plaintiffs included copies of a Summons and Complaint addressed to Mr. Al-Thani in process they caused to be served on CT Corp. Because CT Corp. is not an agent for Mr. Al-Thani

and has no legal relationship with him, this was merely an attempt at substitute service in lieu of personal service, which is not provided for under Massachusetts law.

Plaintiffs also cannot establish service on Mr. Al-Thani through Racing USA. Racing USA is neither Mr. Al-Thani's agent for service of process, his employer, nor place of business. (Dkt. No. 52-1, ¶¶21-24, 35). And, even if it were Mr. Al-Thani's place of business, service would still be inadequate because, under Massachusetts law, service on an individual may not be made by leaving a copy of the Summons and Complaint at an individual's place of business, let alone the registered agent for that business. When a plaintiff attempts to serve a defendant via an agent, "the agent served must possess the authority to accept service on behalf of the defendant." *Donnelly v. UMass Corr. Med. Program*, No. 09-cv-11995-RGS, 2010 WL 1924700, at *1 (D. Mass. May 11, 2010) ("[a]n unequivocal intent to confer authority on a purported agent is required."). Likewise, Rule 4(e) "does not permit service of an individual by leaving the required documents at his place of business, rather than his home." *Swartz v. Bahr*, No. 16-12144-LTS, 2017 WL 2695290, at *2 (D. Mass. June 22, 2017).[2]

Here, Plaintiffs have not served Mr. Al-Thani personally at his home in Qatar, or via an agent authorized to accept service on his behalf in his individual capacity—because no such agent exists. Plaintiffs have only served Racing USA and Speedtech, an Alabama entity, and claim this is sufficient service of process on Mr. Al-Thani—it is not.

2.    Service of Process Did Not Comply with Delaware Law

Plaintiffs' attempt to serve Mr. Al-Thani via personal service on CT Corp. in Delaware also fails under Delaware law. Delaware permits service "upon an individual . . . by delivering a copy of the summons, Complaint and affidavit, to that individual personally or by leaving copies thereof at that individual's dwelling house or usual place of abode with some person . . ." *See* Del.

---

[2] Plaintiffs' attempted service on Mr. Al-Thani through Speedtech, an Alabama entity, fails for the same reasons. Speedtech is neither Mr. Al-Thani's agent for service of process, his employer nor place of business. (Dkt. No. 52-2, ¶¶13-18). Because Rule 4(e) only allows service to be effected in accordance with the laws of the forum state, here Massachusetts, or the state where service is effected, attempted here in Delaware, only Massachusetts and Delaware laws, *infra*, are implicated.

Super. Ct. Civ. R. 4(f)(1)(I). This did not occur here, as Plaintiffs have attempted to serve Mr. Al-Thani by serving CT Corp. in Delaware.

Delaware also provides for service upon an individual "by delivering copies thereof to an agent authorized by appointment or by law to receive service of process." *Id*. Because CT Corp. is not Mr. Al-Thani's authorized agent, Plaintiffs' attempt to serve him in Delaware also failed. Plaintiffs have thus failed to serve Mr. Al-Thani in any acceptable manner under Rule 4(e).

3.     Service Fails to Comply with Rule 4(f)

A Qatari citizen with no ties to Massachusetts, Mr. Al-Thani may only be served pursuant to an internationally agreed-upon means of service. Fed. R. Civ. P. 4(f)(1). Plaintiffs have not served Mr. Al-Thani via any internationally agreed-upon means. Thus, Plaintiffs' attempt to serve Mr. Al-Thani also failed to comply with FRCP 4(f). Accordingly, because Mr. Al-Thani has not been served properly, this Court lacks personal jurisdiction over Mr. Al-Thani. *Trask v. Serv. Merch. Co., Inc.*, 135 F.R.D. 17, 22 (D. Mass. 1991) (absence of good faith attempt to properly serve foreign defendant prevents court from applying liberal service standards).

## II     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. AL-THANI BECAUSE HE DOES NOT HAVE CONTACT WITH MASSACHUSETTS

Even if Plaintiffs had served Mr. Al-Thani properly, this Court still would lack personal jurisdiction over him because the Complaint omits jurisdictional facts necessary to make out a prima facie case of jurisdiction.

### A.     Applicable Jurisdictional Analysis and Burden of Proof

Plaintiffs bear the burden of establishing the court has personal jurisdiction over the defendants. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). Where, as here, the court must decide the issue without first holding an evidentiary hearing, the *prima facie* standard applies. *World Depot Corp. v. Onofri*, No. 16-12439-FDS, 2017 WL 6003052, at *7 (D. Mass. Dec. 4, 2017). In making a *prima facie* showing of jurisdiction, Plaintiffs must go beyond the pleadings and establish affirmative proof. *Id*.

5

When the district court's subject-matter jurisdiction rests wholly or in part on "the existence of a federal question, the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the due process clause of the Fifth Amendment." *See Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 166 (D. Mass. 2001) (internal quotation omitted). However, where, as here, the federal statute at issue does not provide for nationwide service of process, courts are "obliged to look to the law of Massachusetts in determining whether the court may assert jurisdiction over the defendants." *Id.*

When assessing the exercise of personal jurisdiction, courts examine whether a defendant's contact with the forum state implicates specific or general jurisdiction. General jurisdiction exists over an individual only where that individual is domiciled. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). As Mr. Al-Thani is a Qatari citizen with no ties to Massachusetts, general jurisdiction is absent here.

With respect to specific jurisdiction, "a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute *and* its exercise does not offend the Due Process Clause of the Fourteenth Amendment." *Pike*, 143 F. Supp. 2d at 167 (internal citation omitted). Therefore, notwithstanding the fact that this case is based on federal question jurisdiction, "the Fourteenth Amendment 'minimum contacts' analysis acts indirectly on the exercise of jurisdiction in this case because the Massachusetts law is subject to Fourteenth Amendment limitations." *Id.*

The Massachusetts long-arm statute provides, in relevant part, that a defendant is subject to the court's jurisdiction if the defendant's actions (directly or through an agent) gives rise to a cause of action in Massachusetts that arose from one of the following courses of conduct:

- The Defendant transacting business in Massachusetts;
- The Defendant contracting to supply services in Massachusetts;
- The Defendant causing tortious injury by an act in Massachusetts; or
- The Defendant causing tortious injury in Massachusetts by an act outside of Massachusetts if the Defendant regularly does or solicits business or derives substantial

revenue from goods used or consumed or services rendered, in Massachusetts (this subsection is only applicable where ***general jurisdiction***[3] exists over the defendant).[4]

Massachusetts courts require an analysis of the Massachusetts long-arm statute first, followed by an analysis of whether requiring a defendant to litigate in Massachusetts comports with the strictures of the Constitution. *Pike*, 143 F. Supp. 2d at 168. In evaluating whether a plaintiff has met their burden with respect to the Constitutional analysis, the First Circuit evaluates the following three factors: (1) relatedness, (2) purposeful availment, and (3) reasonableness. *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007).

The relatedness inquiry requires that the claim arise out of or be related to the activities within the forum state. *Bluetarp Fin., Inc. v. Matrix Co.*, 709 F.3d 72, 80 (1st Cir. 2013). Purposeful availment requires that a defendant's forum contacts be fixed and intentional, such that a defendant has invoked the benefits and protections of the forum state's laws and making defendant's presence before the state's courts foreseeable. *Id.* If the court determines that the relatedness and purposeful availment inquiries have been satisfied, the court may exercise specific jurisdiction if it is reasonable to do so. *Adelson*, 510 F.3d at 51.

**B.     Plaintiffs Fail to Meet Their Burden of Demonstrating Specific Jurisdiction Under the Massachusetts Long-Arm Statute**

Plaintiffs fail all three prongs of the Massachusetts long-arm statute and fail under a Due Process analysis. Plaintiffs have not alleged that: (1) they are Massachusetts residents; (2) any alleged employment agreements were entered into or terminated in Massachusetts; (3) Mr. Al-Thani or Plaintiffs were ever present in Massachusetts during the relevant time period; (4) any alleged acts or omissions occurred in Massachusetts; or (5) any of Plaintiffs' employment agreements were performed in Massachusetts. Hence, none of the claims "arose out of" Mr. Al-Thani's contacts with Massachusetts; thus, no personal jurisdiction over Mr. Al-Thani exists.

---

[3] *See Hopkins v. Yi*, 2019 WL 3547085, at *4 (D. Mass. May 31, 2019) ("First, it is established that § 3(d) applies only where general jurisdiction exists over the defendant.").
[4] Mass. Gen. Law 223A, § 3(a)-(d).

1.   Plaintiffs Fail to Plead Specific Jurisdiction Under Mass. Gen. Law § 3(c)

There are no allegations that Mr. Al-Thani caused any tortious injury in Massachusetts. Put simply, "no 'bullet' has been fired into Massachusetts to cause injury therein." *Kolikof v. Samuelson*, 488 F. Supp. 881, 883 (D. Mass. 1980). Plaintiffs are not Massachusetts residents, nor do they allege they have ever been to Massachusetts or any tortious act complained of either occurred or caused any of them to be injured in Massachusetts.

Because Plaintiffs have not alleged any injury occurred in Massachusetts, they cannot satisfy subsection (c) of Massachusetts's long-arm statute. *Id*. at 883 (no jurisdiction where "[t]he only act necessary to establish the tort . . . occurred in Pennsylvania.").

2.   Plaintiffs Fail to Plead Specific Jurisdiction Under Mass. Gen. Law § 3(b)

Subsection (b) of the long-arm statute gives rise to jurisdiction over the defendant if the cause of action is "found to have arisen from the defendant's 'contracting to supply services or things in this commonwealth.'" *Droukas v. Divers Training Academy, Inc.*, 376 N.E.2d 548, 553 (Mass. 1978). Courts construe the phrase "in this commonwealth" as referring to the "place where the services or things are to be supplied, rather than referring to the place of the contracting." *Id*. Here, Plaintiffs have not alleged (1) that they or Mr. Al-Thani performed any services or supplied any goods in Massachusetts; or (2) that their alleged employment relationships with Mr. Al-Thani arose out of or were entered into in Massachusetts.

Even under a more lenient test of "the place of contracting," Plaintiffs still could not satisfy this provision. *Id*. (no personal jurisdiction where there "was no allegation in the affidavit of either party" that defendant specifically contracted to deliver or supply engines in the Commonwealth).

3.   Plaintiffs Fail to Plead Specific Jurisdiction Under Mass. Gen. Law § 3(a)

Plaintiffs cannot satisfy subsection (a) of the long-arm statute because they have not offered supporting evidence that Mr. Al-Thani has ever transacted business in Massachusetts, let alone that their causes of action arose out of Mr. Al-Thani's alleged contacts with Massachusetts. Even if Plaintiffs alleged that their employment contracts were entered into in Massachusetts (which they do not), none of the alleged injuries occurred in Massachusetts or arose out of Mr. Al-Thani's

alleged contacts with Massachusetts. Thus, Plaintiffs cannot establish jurisdiction over Mr. Al-Thani under subsection (a). *See, e.g.*, *Fournier v. Best W. Treasure Is. Resort*, 926 F.2d 126, 127 (1st Cir. 1992) (no personal jurisdiction over defendant-hotel under subsection (a) where plaintiff made travel arrangements to stay with defendant-hotel while plaintiff was present in Massachusetts, but was thereafter injured at defendant-hotel's resort in a foreign jurisdiction).

Even assuming, *arguendo*, that Plaintiffs performed some of their alleged employment contracts in Massachusetts, it still would not be enough to assert personal jurisdiction over Mr. Al-Thani. *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 113 (1st Cir. 1997) (nonresident corporation's contacts with Massachusetts insufficient for personal jurisdiction over corporation, where "most performance required from [plaintiff] under the Agreement was to be rendered *outside* Massachusetts."). Consequently, Plaintiffs fail to establish the existence of specific jurisdiction over Mr. Al-Thani under the Massachusetts long-arm statute.

### C.     Plaintiffs Fail to Meet Their Burden of Demonstrating Specific Jurisdiction Under a Traditional Due Process Analysis

Under a traditional Due Process analysis, Plaintiffs have a heavier burden of establishing specific jurisdiction over Mr. Al-Thani. *Pike*, 143 F. Supp. 2d at 168. Specific jurisdiction exists when "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Mass. Sch. of Law at Androver v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). In this case, Plaintiffs do not allege their claims arise from Mr. Al-Thani's contacts with Massachusetts or that those contacts fall within any of the categories set forth in Massachusetts's long-arm statute. The Complaint fails to even cite Massachusetts's long-arm statute or include any allegations about Mr. Al-Thani's conduct in Massachusetts. The Complaint omits any example where Mr. Al-Thani purposefully directed any of his activities at Massachusetts. All alleged employment relationships between Mr. Al-Thani and Plaintiffs were allegedly entered into, performed, and terminated in other jurisdictions.

Accordingly, Plaintiffs have failed to meet their burden of establishing a prima facie case for specific jurisdiction. *See, e.g.*, *Cunningham v. Ardrox, Inc.*, 663 N.E.2d 577, 578-79 (Mass.

App. Ct. 1996) (dismissing former employee's state and federal age discrimination claims against former employer where – even assuming former employee was a Massachusetts resident – employee's job was not terminated in Massachusetts, employer's tortious acts were not committed in Massachusetts, and employee's injuries were not suffered in Massachusetts).

### D. Plaintiffs Fail to Meet Their Burden of Demonstrating General Jurisdiction Under the Massachusetts Long-Arm Statute and a Due Process Analysis

#### 1. Plaintiffs Fail to Plead General Jurisdiction Under Mass. Gen. Law § 3(d)

Under subsection 3(d) of the long-arm statute, Plaintiffs must prove that Mr. Al-Thani either (1) "regularly does or solicits business" in Massachusetts; (2) "engages in any other persistent course of conduct" in Massachusetts; or (3) "derives substantial revenue from goods used or consumed or services rendered in" Massachusetts; *and* (4) that caused injury in Massachusetts through an act committed outside of Massachusetts.

For the reasons discussed above, Plaintiffs cannot satisfy any of these prongs. Plaintiffs have not set forth any supporting evidence that Mr. Al-Thani regularly does business in Massachusetts. Indeed, Mr. Al-Thani does not do any business in Massachusetts, as he is neither employed by, nor a member or owner of, Racing USA. (Dkt. No. 52-1, ¶¶21-24).

Plaintiffs have also not produced any supporting evidence that Mr. Al-Thani has engaged in "any other persistent course of conduct" in Massachusetts, or that he "derives substantial revenue from goods used or consumed or services rendered in" Massachusetts. Again, while Plaintiffs make conclusory allegations as to Mr. Al-Thani's alleged control over and access to Racing USA's operations and assets, Plaintiffs have provided no support for this claim and these claims are contradicted by Mr. Greenbaum's declaration. (Dkt. No. 52-1, ¶¶15, 19-24).

Finally, Plaintiffs fail to allege they suffered a single injury in Massachusetts. This, on its own, is fatal to Plaintiffs' claim for jurisdiction under subsection (d).

#### 2. Plaintiffs Fail to Plead General Jurisdiction Under a Due Process Analysis

Because Plaintiffs' lawsuit does not arise from Mr. Al-Thani's purported contacts with Massachusetts, this Court can only exercise general personal jurisdiction over him if it finds that

his contacts were "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 357 (D. Mass. 2008). Plaintiffs allege *no* contacts with Massachusetts, let alone the "substantial" contacts required for general jurisdiction. *See, e.g.*, *Onofri*, 2017 WL 6003052, at *8 (no general jurisdiction where defendants were Italian residents).

### E.      Plaintiffs Fail to Meet Their Burden of Demonstrating that Mr. Al-Thani is the "Alter Ego" of Racing USA

Plaintiffs' purpose in suing in Massachusetts is to attempt an end run around the obstacles they could not overcome in previous efforts to establish jurisdiction in Florida. Plaintiffs have filed in this jurisdiction, knowing that Racing USA is subject to the Court's general jurisdiction, and have now made vague, conclusory assertions that Mr. Al-Thani is Racing USA's "alter ego" – and every other named-defendant – solely for purposes of trying to establish jurisdiction over him. *See generally* Compl. ¶¶36-44; 100-118; *see also generally* (Dkt. No. 52-1).[5]

It is "axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." *See M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008). Here, Plaintiffs have relied on the alter ego theory for effecting service of process and establishing personal jurisdiction over Mr. Al-Thani. To do so, they must satisfy the test for piercing the corporate veil. In determining what veil-piercing test to apply, courts in federal question cases "look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form[.]" *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1092 (1st Cir. 1992). Because the Complaint asserts FLSA and RICO claims, the *United Electric* standard applies here. *See Schaefer v. Cybergraphic Sys., Inc.*, 886 F. Supp. 921 (D. Mass. 1994).

---

[5] Plaintiffs' attempt to buttress their jurisdictional arguments by alleging that an inactive "Al Anabi" trademark registration is significant to the jurisdictional analysis is equally unavailing. Compl., ¶¶86-87. The alleged use by Al Anabi Racing Limited, a Cyprian entity, of Racing USA's address for the registration does not rise to the level of continuous and systematic contacts with the forum, particularly when any trademark registration is unrelated to Plaintiffs' claims. *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 857 (E.D. Va. 2000) (domain name registration agreement did not create a sufficient relationship for minimum contacts) (internal citation omitted).

While the federal standard for veil piercing is less stringent than state law, "[a]dopting a federal veil-piercing standard for [federal question] cases is not tantamount to saying that separate corporate identities can be overlooked at will or at whim," as the federal standard "still demands a *substantial showing*." *United Electric*, 960 F.2d at 1092. In determining whether it may be appropriate to disregard corporate separateness in a dispute involving federal question jurisdiction, a court should consider the following factors: (1) whether the parent and the subsidiary ignored the independence of their separate operations; (2) whether some fraudulent intent existed on the principals' part; and (3) whether a substantial injustice would be visited on the proponents of veil piercing should the court validate the corporate shield. *Id*. at 1093.

As in *United Electric*, there is "a glaring shortfall in the proof" to pierce the corporate veil here. Thus, the Court's personal jurisdiction over Racing USA – even if it were to exist – does not relieve Plaintiffs of proving personal jurisdiction over Mr. Al-Thani in his individual capacity.

      1.    <u>Plaintiffs Have Produced No Evidence Mr. Al-Thani and Racing USA Have Ignored the Independence of their Separate Operations</u>

Plaintiffs have failed to produce any evidence that Mr. Al-Thani is in any employment relationship with Racing USA, let alone that he has unfettered control or ownership over Racing USA. An alter ego analysis is thus not even necessary here because Mr. Al-Thani is not attempting to use Racing USA as a "corporate shield" to avoid any alleged liabilities. Mr. Al-Thani is simply not involved in Racing USA's operations. (Dkt. No. 52-1, ¶¶21-24). While Plaintiffs have made numerous unsubstantiated allegations that Mr. Al-Thani makes all decisions for Racing USA, and that he is the "owner" of Racing USA, there is no support for these allegations. *Id*., ¶¶15, 21-24. Nonetheless, Mr. Al-Thani conducts an analysis of the alter ego doctrine below.

*First*, even if one were to assume a relationship between Mr. Al-Thani and Racing USA, Plaintiffs offer no evidence that he and Racing USA have "ignored the independence of their separate operations." Mr. Al-Thani is not Racing USA's employee or officer and does not operate, manage or own Racing USA, *id*., ¶¶15, 21-24, contradicting what Plaintiffs must allege to satisfy even the first element of the *United Electric* test.

Plaintiffs' conclusory allegations of commingling and control by Mr. Al-Thani, without more, cannot satisfy their burden at this stage in the case. *E.g.*, *Onofri*, 2017 WL 6003052, at *8 ("A plaintiff may not rely on unsupported allegations in [its] pleadings. Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists."). This factor should be the end of the inquiry—Mr. Al-Thani's independence from and lack of control over Racing USA prevents Plaintiffs from satisfying either of the remaining two factors. That is, Racing USA cannot be maintained by Mr. Al-Thani for the purpose of avoiding liability or committing a "fraud" if Mr. Al-Thani does not own or control Racing USA.

Plaintiffs are not trying to pierce a corporate shield. They are trying to fabricate personal jurisdiction over a foreign citizen with no Massachusetts contacts by suing a Massachusetts-based entity and claiming, without support, that he is its "alter ego." Plaintiffs' transparent attempt to use the alter ego doctrine to avoid their obligations to properly effect service on and establish jurisdiction over a foreign citizen should be rejected by this Court.

2.     Plaintiffs Have Produced No Evidence that Mr. Al-Thani Maintains or
       Operates Racing USA to Avoid Liability

*Second*, there is no allegation (much less evidence) that Racing USA is maintained by Mr. Al-Thani to avoid liability. Fraudulent behavior under this factor "includes . . . maintain[ing] the subsidiary to avoid a statutory responsibility, act[ing] in a blameworthy manner, loot[ing] the subsidiary, or so undercapitalizing the subsidiary that the latter could not reasonably have been expected to meet its obligations." *Schaefer*, 886 F. Supp. at 925-26 (internal quotation and citation omitted). As with the first factor, Plaintiffs provide no evidence that Racing USA is either a sham or inadequately capitalized, that Mr. Al-Thani owns, operates, or is even an employee of Racing USA, or that he intended to use Racing USA "as a shell in order to corruptly avoid obligations owed to the [Plaintiffs] under" employment agreements or otherwise. *United Electric*, 960 F.2d at 1094.

Again, aside from conclusory allegations, there is no evidence Mr. Al-Thani tried to "loot" Racing USA or otherwise subvert FLSA policies by "reliance on the technicalities of the corporate

form." *Compare Schaefer*, 886 F. Supp. at 927 (plaintiff established fraud by parent company where parent "exercised pervasive control over [the subsidiary] throughout the period at issue," and parent was "now trying to withdraw, Oz-like" by transferring vast majority of its assets out of subsidiary to avoid paying plaintiff in the event of a judgment).

       3.       Plaintiffs Fail to Demonstrate a Manifest Injustice Would Occur if Mr. Al-Thani Were Dismissed from this Case

*Third*, Plaintiffs fail to demonstrate that a "manifest injustice" would befall them if this Court were to "uphold the corporate shield." *Schaefer* is instructive on this final factor. There, the court found there would be an injustice if the veil were not pierced because the subsidiary whom plaintiff worked for owed her "approximately $348,000 in unpaid commissions and unreimbursed business-related expenses," and the subsidiary had a "bleak financial future." *Id.* at 925. Had the corporate shield been respected, the plaintiff would not have been able to recover from the subsidiary and would thereafter have to litigate against the parent in Australia. *Id.*

Here, Plaintiffs do not assert that Racing USA has a "bleak financial future," such that if Plaintiffs were successful on the merits they would be unable to enforce a judgment. Thus, upholding the corporate formalities in this case does not work an injustice, but instead follows what was intended by the law. *United Electric*, 960 F.2d at 1093 ("[L]imited liability is often a paramount consideration in the decision to maintain corporate separateness, and properly so.").

**F.      Exercising Personal Jurisdiction Over Mr. Al-Thani Does Not Comport with Constitutional Due Process Requirements**

Even if there were a basis for jurisdiction under Massachusetts's long-arm statute and Plaintiffs satisfied the "relatedness" and "purposeful availment" prongs of the Due Process analysis, personal jurisdiction over Mr. Al-Thani still would run afoul of constitutional protections. This is why, as part of this Court's three-step inquiry to assess if it has personal jurisdiction over a non-resident, it must also determine whether notions of fair play and substantial justice comport with the exercise of personal jurisdiction. *See, e.g.*, *Adelson*, 510 F.3d at 51 ("Even

after concluding that minimum contacts exist, personal jurisdiction may only be exercised if it would be reasonable, pursuant to a series of factors[.]").

The factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Id*. These factors show that exercising jurisdiction over Mr. Al-Thani would be unreasonable.

First, the burden on Mr. Al-Thani is substantial because he is a resident of Qatar and has no Massachusetts contacts. *See, e.g.*, *Onofri*, 2017 WL 6003052, at \*10 (first factor weighed in favor of defendants because defendants were "an Italian citizen and an Italian entity, respectively, essentially accused of violating Italian law.")

Second, Massachusetts's interest in adjudicating this dispute is minimal at best, as none of the Plaintiffs are Massachusetts residents and none of the alleged conduct (or alleged injuries) occurred in Massachusetts. *Id*. ("[I]nterest is relatively modest where the relevant conduct occurred almost entirely in Italy, not Massachusetts.").

The third factor, *i.e.*, Plaintiffs' interest in obtaining a convenient and effective relief, does not even favor Plaintiffs. While Plaintiffs are ordinarily given deference on this factor, Plaintiffs' choice of forum in this instance should not be given deference, as they only sued here to attempt an end run around jurisdiction. In evaluating the fourth factor, *i.e.*, "the judicial system's" factor, "[c]ourts are instructed to focus on the judiciary's interest in obtaining the most effective resolution of the controversy." *Id*. Because the alleged conduct occurred in different states, with a majority of the most serious alleged conduct in Qatar, it is unclear what states' laws would even apply to Plaintiffs' state law claims. *Id*. (where Italian law would likely apply, the fourth *Gestalt* factor weighed against finding of reasonableness).

Finally, the common interests of all sovereigns in promoting substantive social policies weigh against a finding of reasonableness, as none of the Plaintiffs are Massachusetts citizens, and Qatar has an interest in regulating the conduct of its domiciles and protecting its citizens from

undue liability. *Id.* As in *Onofri*, the Court should find that "there are not minimum contacts with the state such that the exercise of jurisdiction accords with traditional notions of fair play and substantial justice." Accordingly, the Court should dismiss the Complaint for lack of personal jurisdiction over Mr. Al-Thani.

## III    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. AL-THANI

### A.    Legal Standard

A complaint must "show[] that the pleader is entitled to relief" or face dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2), 12(b)(6). A complaint's factual allegations must be enough to raise a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss for failure to state a claim, legal conclusions in the complaint are not accepted as true. *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011).

This Complaint is not only made up of vague and ambiguous allegations, but is the textbook shotgun pleading disfavored in this Circuit because Mr. Al-Thani cannot reasonably prepare a response. *U.S. ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc*., 713 F.3d 662, 664 (1st Cir. 2013). *Currier v. Town of Gilmanton*, No. 18-CV-1204-LM, 2019 WL 3779580 (D.N.H. Aug. 12, 2019), is instructive on this issue. There, the court insightfully addressed the issue that this Court and Mr. Al-Thani now face, where it dismissed a complaint that contained 291 paragraphs, failed to specify which facts "support each separate claim for relief," and incorporated irrelevant allegations into each cause of action. *Id.*, at *3.

As further set forth below, the 799-paragraph, barely comprehensible shotgun Complaint at issue here—which makes no mention of applicable law to certain claims or plaintiff—makes the 299-paragraph *Currier* complaint look concise by comparison.

### B.    Plaintiffs' FLSA Claims (Counts 1, 4) Fail to State a Claim

#### 1.    Plaintiffs' FLSA Claims Are Time-Barred

Under the FLSA, an action for unpaid wages and damages must "be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful

violation may be commenced within three years after the cause of action accrued." 29 U.S.C. §

255. Also, courts consistently hold that retaliation claims under FLSA § 215(a)(3) are subject to

the same limitations period of § 255. *Crowley v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*,

938 F.2d 797, 800 (7th Cir. 1991).

Plaintiffs have not alleged sufficient facts to demonstrate that any unpaid wage violations

occurred within the statute of limitations period. This fact alone warrants dismissal of the claims.

*See Guardia v. Clinical & Support Options, Inc.*, 25 F. Supp. 3d 152, 159 (D. Mass. 2014).

Likewise, allegations of unpaid overtime pay must be specific as to when the overtime was worked

such that the court can determine whether it has been timely asserted. *Gould v. First Student Mgmt.,*

*LLC*, No. 16-cv-359-PB, 2017 WL 3731025, at *6 (D.N.H. Aug. 29, 2017).

Plaintiffs' lawsuit was filed on June 16, 2020. As set forth below, Plaintiffs' FLSA claims

are either time-barred in their entirety (Smith and Allende) or are severely limited (Hope, Tohme

and Pittard), as Plaintiffs concede that the vast majority of their respective employment occurred

well before June 16, 2018, the applicable two-year limitations period:

- <u>Smith</u> alleges his last date of employment with Defendants occurred in July 2016, Compl. ¶142, a full two years outside to the statute of limitations period.
- <u>Hope</u> alleges his last date of employment with Defendants was in July 2018, Compl. ¶232, with no allegation that any unpaid wage violations occurred in the final weeks of his alleged employment; instead, opting for blanket statements about his working hours in general. *See, e.g.*, Compl. ¶244 (alleging that he "was subject to long working hours, ranging from fifty (50) to one hundred (100) hours per week").
- <u>Tohme</u> alleges his last date of employment was on June 30, 2018, Compl. ¶369. He alleges only generally that he worked long hours. *See, e.g.*, Compl. ¶382 ("There were periods of time, on at least five occasions, where Plaintiff Tohme worked for 20 to 36 hours straight, with no opportunity for sleep."). He does not identify any of these occasions by date.
- <u>Pittard</u> alleges his last date of employment occurred on July 10, 2018, Compl. ¶435. He too only alleges he worked long hours. *See, e.g.*, Compl. ¶449 (he "consistently worked in excess of forty (40) hours per week but was not paid overtime").
- <u>Allende</u> admits his last date of employment was February 4, 2018, Compl. ¶494, with no allegation that any adverse employment action occurred within two years before filing this Complaint. Given his claim that he was injured in December 2017, there are no facts to suggest that Allende performed any work after December 2017.

Smith and Allende cannot bring FLSA claims because their alleged employment ended more than two years prior to filing the Complaint. Hope, Tohme, and Pittard's FLSA unpaid overtime claims are also time-barred because, although roughly two weeks of their respective work purportedly fell within the limitations period, they fail to allege they worked—and were not paid for—overtime wages within those respective final weeks.

Plaintiffs' allegations also fail on the three-year "willful" exception under the FLSA. The only willful allegation is that "Defendants were aware, or should have been aware, that the practices . . . were, and are, unlawful" (Compl. ¶647), a legal conclusion that cannot substitute for the required allegation providing the defendants with suitable notice. *Guardia*, 25 F. Supp. 3d at 159 (declining to apply 3-year statute of limitations).

### C.   Plaintiffs Fail to State an FLSA Unpaid Overtime or Retaliation Claim

#### 1.   Unpaid Overtime Compensation Claims

To state a claim for unpaid overtime under the FLSA, Plaintiffs must allege "(1) they were employed by [Mr. Al-Thani]; (2) their work involved interstate activity; and (3) they performed work for which they were under-compensated." *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012). *First*, Plaintiffs fail to satisfy the first prong of this analysis, *i.e.*, having failed to identify a direct employer. *Second*, Plaintiffs fail to satisfy the third prong, as they only allege they "consistently worked in excess of forty (40) hours per week but w[ere] not paid overtime . . . with minimal meal breaks." *See* Compl. ¶¶449, 501, 535, 631. These allegations are insufficient. *Pruell*, 678 F.3d at 13-14 (allegation that plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" was "little more than a paraphrase of the statute" and did not state a FLSA claim).

*Finally*, Plaintiffs fail to establish FLSA's overtime provisions even apply to them. There are no allegations that they were employed as non-exempt, hourly employees versus salaried, employees exempt from FLSA's requirements. If Plaintiffs were exempt from FLSA's overtime provisions, the number of worked hours worked is immaterial, rendering their claims deficient.

2.      Hope, Pittard and Allende Fail to Plead FLSA Retaliation

"The FLSA prohibits an employer from 'discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter.'" *Yayo v. Museum of Fine Arts*, No. CIV.A. 13-11318-RGS, 2014 WL 2895447, at *5-6 (D. Mass. June 26, 2014) (quoting 29 U.S.C. § 215(a)(3)). To state a FLSA retaliation claim, a plaintiff, must make "at a minimum, a showing that (1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity." *Blackie v. State of Me.,* 75 F.3d 716, 722–23 (1st Cir.1996). To be actionable, "the record must enable the trier plausibly to find that a causal connection existed *between the protected conduct and the adverse action.*" *Id.* (emphasis in original).

Hope, Pittard, and Allende fail to sufficiently allege any one of the elements as they do not allege they engaged in any "statutorily protected activity," and, thus, cannot allege they were subjected to an adverse employment action as a result of that activity. *Cf. Joyce v. Upper Crust, LLC*, No. CIV.A. 10-12204-DJC, 2012 WL 3028459, at *3 (D. Mass. July 25, 2012).

Hope, Pittard, and Allende allege no fact even suggesting any of them engaged in statutorily protected activity under the FLSA. Hope and Pittard's allegation they were terminated for refusing to engage in criminal activity, and Allende's that he was terminated for requesting a day off from work, Compl. ¶¶663, 660, 666, even if true—which they are not—do not give rise to a retaliation claim because the triggering termination event was not protected under FLSA. *Williams v. United Tech.*, No. 12-10294-RGS, 2013 WL 1681895, at *2-3 (D. Mass. Apr. 12, 2013) (Stearns, J.) (employee's angry response of throwing away piece of paper in employer's presence did not amount to "protected activity.").

Even if the alleged activities were statutorily protected under the FLSA, Plaintiffs have not sufficiently alleged that their termination of employment was a direct result of the statutorily protected activity. In fact, the timing of their alleged terminations belies the claim that these purported terminations were causally related to any alleged retaliation. Hope alleges that he

refused Mr. Al-Thani's request to murder someone in November 2017 and was terminated in July 2018 (Compl. ¶¶297, 232, 304). Pittard alleges that he also refused a request by Mr. Al-Thani to murder a couple in September 2017 (Compl. ¶¶456-457), but was terminated in July 2018, *nearly a year* after his alleged refusal (Compl. ¶435). Finally, Allende's retaliation claim is that he harmed himself while fleeing Mr. Al-Thani's property in Qatar in December 2017 (Compl. ¶¶508, 516-517) and was fired on February 4, 2018—*two months* later. *See* Compl. ¶518.

Plaintiffs have failed to establish causation given the lack of temporal proximity between the alleged motivating acts and the purported terminations, or any fact connecting the termination to the claimed acts. Given this failure, Plaintiffs' retaliation claims must be dismissed.

### D.   Pittard, Tohme, Allende and Mollenbrink Fail to State a Claim for Unpaid Overtime Wages under California and Florida Law (Counts 2, 3)

In order to state a claim under California Labor Code § 510, Plaintiffs must prove: (1) they performed work for Mr. Al-Thani; (2) they were entitled to and worked overtime hours; (3) Mr. Al-Thani knew or should have known that Plaintiffs had worked overtime hours; (4) they were not paid for some or all of the overtime hours worked; and (5) the amount of overtime pay owed. *Anderson v. Equinox Holdings, Inc.*, No. 2-18-cv-03759-SVW-RAO, 2019 WL 77139, at *3 (C.D. Cal. Jan. 2, 2019). Plaintiffs fail to allege any facts establishing that they were directly, jointly or otherwise "employed" by Mr. Al-Thani. *Futrell v. Payday Cal., Inc.*, 190 Cal. App.4th 1419, 1430 (Ct. App. 2010). Further, Plaintiffs cannot state a claim under § 510 where a vast majority of their work was performed outside of California.[6] Last, Plaintiffs' claims fail for the same reasons discussed in Section III.C.1., *supra*—they do not sufficiently plead facts to show they were even entitled to overtime pay from Mr. Al-Thani. Accordingly, Plaintiffs' claims under § 510 must be dismissed.[7]

---

[6] *See* Section III.I., *infra* (citing *Ward v. United Airlines, Inc.*, No. S248702, 2020 WL 3495310, at *14 (Cal. June 29, 2020) ("the Legislature ordinarily does not intend for its enactments to create conflicts with other sovereigns.")).

[7] Moreover, Plaintiffs' claims under § 510 (and Pittard's claim under Fla. Stat. § 448.01) are duplicative of their claims under the FLSA, and thus must be dismissed. *See, e.g.*, *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 55 (1st Cir. 2014) (FLSA preempts state law claims because they conflict with the "FLSA's comprehensive remedial scheme.").

Pittard's claim for unpaid overtime under Fla. Stat. § 448.01 also fails because the statute has been declared unconstitutionally vague. *See, e.g.*, *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313 (S.D. Fla. 2006).

### E.   Pittard's Fla. Stat. § 448.102 Retaliation Claim (Count 5) Fails to State a Claim

Fla. Stat. § 448.102 provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." To prove a *prima facie* case under this provision, Pittard must establish that: "(1)[] he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity." *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005).

To establish a causal connection, Pittard must show that Mr. Al-Thani was aware of the statutorily protected conduct and it was not wholly unrelated to the adverse action, neither of which is alleged here. "[W]here 'there is no other evidence tending to show causation, the temporal proximity must be 'very close,'" *Thomas v. Tyco Int'l Mgmt. Co., LLC*, 416 F. Supp. 3d 1340, 1363-64 (S.D. Fla. 2019) (citations omitted), less than two or three months. *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004). Pittard concedes that his employment was not terminated until July 2018, *nearly a year* after his alleged refusal to engage in criminal activity. Compl. ¶457. This alone requires dismissal under Fla. Stat. §448.102.

### F.   Allende's C.L.C. § 1102.5 Retaliation Claim (Count 6) Fails to State a Claim

California Labor Code § 1102.5 prohibits retaliation against any employee for disclosing information, or because the employer believes the employee disclosed or may disclose information, to a government or law enforcement agency, or to a superior in the employer's entity, so long as the employee has reasonable cause to believe that the information discloses a violation of law or regulation. *See* C.L.C. § 1102.5. Section 1102.5 claims "are governed by the one-year

statute of limitations[.]" *Terbeek v. Panda Rest. Grp., Inc.*, No. E059775, 2015 WL 1863046, at *4 (Cal. Ct. App. Apr. 22, 2015) (citing Code Civ. Proc. § 340(a) and C.L.C. § 1102.5(f)).

Allende alleges he was "employed as a paramedic by Defendants from approximately October 15, 2017, to February 4, 2018," Compl. ¶494, when his employment was "wrongfully terminat[ed]" in retaliation for asking for personal time off from work. Compl. ¶663. Allende's alleged claim under § 1102.5 therefore began accruing as of February 4, 2018, and was required to be asserted within one year. Allende did not assert his cause of action until June 2020. It is therefore time-barred.

Even if Allende's claim were not time-barred, he still fails to "identify what specific activity he [] refused to participate in and what specific statute, rule, or regulation would be violated by that activity." *Nejadian v. Cty. of L.A.*, 40 Cal. App.5th 703 (Ct. App. 2019). Accordingly, his §1102.5 claim should be dismissed.

### G. Hope's T.C.A. § 50-1-304 Retaliation Claim (Count 7) Fails to State a Claim

Tennessee's Public Protection Act, T.C.A. § 50-1-304(a) ("TPPA") provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." To prevail, "the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). "Illegal activities" are defined as a "violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." § 50-1-304(c).

Hope's TPPA claim should be dismissed for two reasons. *First*, TPPA retaliation claims are subject to a one-year statute of limitations period, which begins to accrue after the alleged retaliatory practice ceases. *Stewart v. Memphis Hous. Auth.*, 287 F. Supp. 2d 853, 858 (W.D. Tenn. 2003) (citing Tenn. Code Ann. § 4-21-311). Hope alleges he "was employed by Defendants from July 2008 to July 2018," Compl. ¶232, well beyond the one-year mark, barring his claim.

22

Even if Hope had timely asserted his TPPA claim, the claim fails because he fails to allege his termination occurred *solely* due to his alleged refusal to engage in unlawful activity. *See Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 859 (E.D. Tenn. 2013). Hope simply alleges that his employment was terminated as retaliation after he "refused to engage in criminal activity in violation of public policy at the request of Defendant Khalid." Compl. ¶666. However, Hope was not terminated until July 2018—nearly *one entire year* after his alleged refusal to engage in unlawful activity, Compl. ¶232, lacking the temporal relationship to allege TPPA causation.

Accordingly, Hope fails to state a TPPA claim, requiring dismissal.

### H.     Smith, Tohme and Mollenbrink's Breach of Contract Claims (Counts 8, 9, 10) Fail to State a Claim

Smith asserts a cause of action for breach of contract under Tennessee law and Tohme and Mollenbrink assert causes of action for breach of contract under California law, all with respect to their alleged employment agreements with "Defendants."

Under California law, a plaintiff alleging breach of contract must show "(1) a contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff from the breach." *Instant Infosystems, Inc. v. Open Text, Inc.*, No. BC619405, 2017 WL 5652470, at *1 (Cal. Super. Ct. Sept. 27, 2017) (internal quotation and citation omitted). Tennessee law is analogous. *See ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Smith, Tohme, and Mollenbrink all fail to satisfy even the first of these prongs because they do not properly allege the existence of an employment agreement (oral or written), much less an employment agreement with Mr. Al-Thani directly. In an attempt to allege the existence of an employment agreement, Smith, Tohme and Mollenbrink rely on vague statements that they each had an "employment contract with Defendants," Compl. ¶¶669, 672, 675, or were "hired" or "employed" "by Defendants," Compl. ¶¶143, 373, 524.

This is insufficient under both California and Tennessee law. California law requires the terms of a written contract "be set out verbatim in the body of the complaint or a copy of the written

agreement must be attached and incorporated by reference." *Spanish Inn, Inc. v. Nara Bank*, No. D066487, 2015 WL 1035418, at *5 (Cal. Ct. App. Mar. 6, 2015). In Tennessee, a cause of action for breach of contract must "clearly indicate [] the material terms" of the agreement. *Setzer v. First Choice Lending Servs., LLC*, No. 18-5192, 2018 WL 7500477, at *4 (6th Cir. Sept. 10, 2018).

Smith, Tohme and Mollenbrink do not identify necessary terms of their alleged employment contracts (including who they entered into the contracts with) nor attach them to the Complaint. Without more, Smith, Tohme and Mollenbrink cannot maintain their causes of action for breach of contract.[8] The claims should be dismissed on this basis alone.

Even if an enforceable agreement were sufficiently alleged, Plaintiffs also fail to allege whom their employment agreements were with. Under California and Tennessee law, a breach of contract claim may only be asserted against a signatory to the contract or a third-party beneficiary. *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App.4th 1004, 1021–22 (Ct. App. 2009); *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 68 (Tenn. 2001). The Complaint fatally fails to allege either circumstance.

## I.     Tohme, Allende and Mollenbrink's C.L.C. § 226 Claim for Failure to Provide Wage Statements (Count 14) Fail to State a Claim

Tohme, Allende and Mollenbrink seek statutory penalties under the California Labor Code, which requires that "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee" a written statement of wages including nine items. C.L.C. § 226(a). The statute of limitations for a § 226(a) claim seeking statutory penalties against an employer for failure to provide complete and accurate wage statements is one year. *See Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App.5th 444, 468 (Ct. App. 2019).

Tohme alleges he was employed "by Defendants from June of 2017 to June 30, 2018." Compl. ¶369. Allende alleges he was "employed as a paramedic by Defendants from approximately October 15, 2017, to February 4, 2018." Compl. ¶494. Mollenbrink alleges he was

---

[8] Breach of contract claims based on oral contracts in California are subject to a two-year statute of limitations, whereas claims based on written contracts are subject to longer period. Cal. Civ. Code §§ 337, 339. Neither the Court nor Mr. Al-Thani can determine the statute of limitations applicable based on current allegations.

"employed as a licensed, registered nurse by Defendants from approximately May 2018 to March 2019." Compl. ¶522. All three Plaintiffs fail to assert claims within the one-year statute of limitations, thus making their claims time barred.

Even if they could sufficiently allege timely claims, they fail to state a claim under C.L.C. § 226(a) because they have not alleged they worked "the majority of the time in California," as required. *See Ward*, 2020 WL 3495310, at *14. Tohme alleges he "began his employment" in California, Compl. ¶370, but that he otherwise worked across the United States and abroad, Compl. ¶¶371-72. Allende also alleges that he "began his employment" in California, Compl. ¶495, but that his work required him to travel with Mr. Al-Thani, Compl. ¶498, and that, roughly 50 days after being hired, he relocated to Qatar, Compl. ¶499. Mollenbrink alleges he was hired as a result of a meeting in California, Compl. ¶523, but fails to allege he specifically ever performed work in California. These are allegations are insufficient.

Plaintiffs also fail to plead sufficient facts to establish that they were not salaried exempt employees excluded from the total hours requirement under § 226(j) which provides that the total hours category is not required of salaried employees who are exempt from overtime. Plaintiffs' vague assertions that "Defendants failed to provide Plaintiffs with wage statements listing the number of hours worked each week of employment with Defendants and the rate received for such hours," Compl. ¶688, ignores this subsection. This additional failure is fatal to their claims.

**J.     Pittard's Claims for Violation of Florida's Unfair and Deceptive Trade Practices Act (Counts 11 and 12) Fail to State a Claim**

Pittard alleges a cause of action under the Florida Deceptive and Unfair Trade Practices Act for Tortious Interference with Business Contract (Compl., Count 11) and for Tortious Interference with a Business Relationship (Compl., Count 12).

Pittard fails to state a cognizable claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"). In order to assert a proper claim under FDUPTA, the alleged act must be based on activity that transpires within the territorial boundaries of Florida. *See Molinos Valle Del Cibao, C. Por A. vs. Lama*, No. 07-23066-CIV, 2008 WL 11333544, at *3 (S.D. Fla. Oct. 22,

2008) (finding that "that FDUPTA applies to 'unfair, deceptive and/or unconscionable *practices* which transpired within the territorial boundaries of [Florida] without limitation.'") (internal citation omitted).

The analysis should go no further as Pittard does not allege anything occurred in Florida. He also fails to plead the alleged harm to consumers required under FDUPTA. *See GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, 16-24431-CIV, 2018 WL 1393790, at *21 (S.D. Fla. Jan. 26, 2018). Accordingly, Counts 11 and 12 should be dismissed as they fail to state a FDUPTA claim.

### K.   Plaintiffs' State-Law Tort Claims against Mr. Al-Thani (Counts 13 and 16-27) Fail to State a Claim

Plaintiffs include multiple tort claims (collectively the "Tort Counts"), in which they assert each claim against "Defendants." The various Tort Counts attempt, but fail, to allege Personal Injury (Count 13)[9], Intentional and Negligent Infliction of Emotional Distress (Compl. Counts 16-17), False Imprisonment (Compl. Counts 18-22), and Assault and Battery (Compl. Counts 23-27) against Mr. Al-Thani.

#### 1.   Allende and Hope's Tort Counts Are Time-Barred

Allende alleges that, in **December 2017**, while attempting to leave Mr. Al-Thani's Qatar property, another individual prevented him from leaving and that Allende consequently fled in fear for his life, resulting in permanent injuries to his foot. Compl. ¶¶511-519. Presuming these allegations are relevant to his claims for false imprisonment, personal injury, and assault and battery, they are time barred under California's statute of limitations.[10] *Lopes v. Fremont Freewheelers*, No. C 07-6213 PJH, 2008 WL 3304944, at *5 (N.D. Cal. Aug. 7, 2008) ("The limitations period for the tort of **assault and battery** is . . . two years."); *Magney v. Cty. of Humboldt*, No. 17-cv-02389-HSG, 2018 WL 1156817, at *3 (N.D. Cal. Mar. 5, 2018) ("[T]he

---

[9] Notably, there is no independent cause of action for "Personal Injury" under California law. Various independent actions are collectively referred to as "personal injury actions" but there is no action entitled "personal injury."

[10] Plaintiffs' shotgun-pleading fails to specifically allege which alleged actions are grounds for Plaintiffs' Tort Counts. By way of example only, in Count 16, the Complaint improperly groups all Plaintiffs together in one cause of action and simply recites threadbare legal elements of Intentional Infliction of Emotional Distress. Compl. ¶¶696-703. There is not one specific allegation contained in this Count (or any of the other Tort Claims, for that matter). This fact alone warrants dismissal of Plaintiffs' Tort Counts.

statute of limitations for ***personal injury*** actions is two years."); *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 988 (E.D. Cal. 2016) (one-year statute of limitations for ***false imprisonment*** claims).

    <u>Hope</u> alleges various events arguably relevant to his Tort Counts,[11] but does not allege Mr. Al-Thani committed a single tortious act against Hope *after Hope's alleged employment with "Defendants" was terminated*. Because Hope's employment relationship with "Defendants" allegedly ended in **<u>July 2018</u>**, all of Hope's Tort Counts are time barred by Tennessee's one-year statute of limitations. *Chase v. White*, No. 3:16-cv-01576, 2016 WL 7210155, at *5 (M.D. Tenn. Dec. 13, 2016) (***assault and battery*** claims governed by a one-year limitations period) (citing Tenn. Code Ann. § 28-3-104(a)(1)(A) (***false imprisonment*** claims governed by a one-year limitations period)); *Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *8 (Tenn. Ct. App. Aug. 22, 2016) (***intentional and negligent infliction of emotional distress*** claims governed by a one-year limitations period).

2.    <u>Smith Fails to State a Claim (Counts 16, 17)</u>

    Smith's alleged employment relationship with "Defendants" ended in July 2016. Compl. ¶142. Accordingly, as noted above, any alleged conduct giving rise to Smith's claims for emotional distress under Counts 16 & 17 are time barred. *See, e.g.*, *Jackson*, 2016 WL 4443535, at *8.

    To the extent Smith attempts to assert claims based on conduct by Mustafa Atat that allegedly occurred in August 2019, this is an alleged employee of "Defendants" and not a named party in this lawsuit, Compl. ¶¶230-231. This alleged act cannot state a claim against *Mr. Al-Thani*. There is no allegation that Mr. Atat was acting either as Mr. Al-Thani's agent or at his direction. Nor do Plaintiffs provide any evidence that Mr. Atat was acting in the scope of his employment at the time of this alleged phone call, such that Mr. Al-Thani – *presuming that he even employs Mr. Atat* – could be held vicariously liable for his actions. *Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3-CV, 2014 WL 2895898, at *3 (Tenn. Ct. App. June 23, 2014) (tort

---

[11] Hope asserts claims for Intentional Infliction of Emotional Distress (Count 16), Negligent Infliction of Emotional Distress (Count 17), False Imprisonment (Count 18), and Assault and Battery (Count 23).

claims dismissed against principal where complaint "does not allege . . . [Defendants] directed or authorized the allegedly tortious conduct" of the individual defendants).

> 3. <u>Allende, Tohme, Mollenbrink and Pittard's Tort Counts Must Be Dismissed on Presumption Against Extraterritorial Application of States' Laws</u>

Allende, Tohme, and Mollenbrink assert their Tort Counts against Mr. Al-Thani under the presumption that California law applies to their claims. Pittard asserts his Tort Counts against Mr. Al-Thani without naming an applicable law.[12]

California and Florida law provide a strong presumption against extraterritorial application of state law (*i.e.*, to claims occurring in another jurisdiction). *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011); *Boehner v. McDermott*, 332 F. Supp. 2d 149, 155 (D.D.C. 2004). Mr. Al-Thani is entitled to dismissal of Allende, Tohme, Mollenbrink, and Pittard's Tort Counts because of California and Florida's presumption in this regard.

## L. Plaintiffs Fail to State a Cause of Action for "Misrepresentation"

Plaintiffs' Count 15, labeled simply as "Misrepresentation," appears to track the elements of *intentional* misrepresentation. Compl. ¶¶690-694. Intentional misrepresentation is considered a species of fraud and subject to the Fed. R. Civ. P. 9(b) heightened pleading requirements. *See Cabi v. Bos. Children's Hosp.*, 161 F. Supp. 3d 136, 163 (D. Mass. 2016) ("[T]he pleader usually is expected to specify the who, what, where, and when of the allegedly false ... representation."). As with the labor and tort counts, *all* Defendants are grouped as the perpetrators of the alleged, intentional misrepresentation. Compl. ¶¶690-95. As a result, Plaintiffs have failed to allege, with the requisite specificity required by Rule 9(b), the necessary elements, namely, that: "(1) the defendant made a false misrepresentation of material fact, (2) the defendant acted with knowledge of its falsity, (3) the defendant acted with the purpose of inducing the plaintiff to act on the misrepresentation and (4) the plaintiff relied on the misrepresentation to her detriment." *Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 341 (D. Mass. 2007).

---

[12] Nonetheless, because Pittard presumes the rest of his state law claims arise under Florida law, Mr. Al-Thani will address Pittard's Tort Counts pursuant to Florida's laws regarding extraterritorial application.

Each Plaintiff's individual allegations are included in 486 paragraphs (Compl. ¶¶142-628). These claims must be dismissed in their entirety. *First*, to the extent that the Plaintiffs' claims for misrepresentation are based on allegations that the Plaintiffs were promised a certain salary and overtime pay, these claims are preempted by Plaintiffs' FLSA claims. *Manning*, 725 F.3d at 55. Even if Plaintiffs' claims were not preempted by the FLSA, none of the Plaintiffs' allegations state a claim under the heightened pleading standard imposed under FRCP 9(b):

- Allende: No allegation that a single Defendant – let alone Mr. Al-Thani – made a misrepresentation to Allende.
- Mollenbrink: No allegation that Mr. Al-Thani made a misrepresentation to him. Instead, Mollenbrink simply recites the elements of the claim and says only that he relied on "Defendants'" misrepresentations. Compl. ¶530. No allegation as to who made the misrepresentation, when it occurred, or any other fact that would allow Mr. Al-Thani to formulate an intelligible response to this allegation.
- Pittard: As with Mollenbrink, no allegation as to who made misrepresentations to him regarding his salary, overtime pay, or his ownership share in Geo Strategic Defense Solutions, LLC. Only allegation: "Defendants" made these representations. Compl. ¶446.
- Hope: Same as Pittard and Mollenbrink. Only allegation: "Defendants" promised him an annual salary of $96,000.00 USD and that "Defendants" promised him 25% of sales from the "Qatar Race Club snack bar that Plaintiff Hope established for Defendants" but that "despite demands, Defendants failed to ever pay Plaintiff Hope any percentage of sales[.]" Compl. ¶¶236, 239, 242. These allegations lack the necessary specificity. Hope also attempts to plead a misrepresentation claim with respect to Mr. Al-Thani's alleged promise – apparently made to Hope in or around October 2014 – that Hope and Smith could have a "race rig" for free, but that Mr. Greenbaum "appeared" and took the race rig away from Hope and Smith. Compl. ¶202. This allegedly occurred almost *six years ago* and is thus time-barred.
- Smith: First, Mr. Al-Thani allegedly made the race rig promise in October 2014; misrepresentation claims are subject to a three-year statute of limitations,[13] barring this claim. Second, in November of 2008, Mr. Al-Thani "assured Plaintiff Smith that he would be paid and confirmed the terms of Plaintiff Smith's employment contract." Compl. ¶164; this claim is preempted by Smith's FLSA claim and is also time-barred. Third, in or around July 2016, his employment was terminated by Mr. Al-Thani when he refused to race in Qatar, even though "Defendants" had allegedly promised that he only had to race in the United States. Compl. ¶¶205, 211-214; again time-barred, but also fails to state with specificity *who* made promises to Smith. Compl. ¶205.
- Tohme: In July 2017, Mr. Al-Thani allegedly "tasked [] Tohme with securing a home for him in the Los Angeles area," that Tohme signed the lease on Mr. Al-Thani's behalf, but that Mr. Al-Thani failed to honor the lease. Compl. ¶¶375-376; Mr. Al-Thani's

---

[13] *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1038 (Mass. App. Ct. 2003).

refusal to honor the lease resulted in Tohme having a judgment for $175,000.00 USD entered against him in California. Compl. ¶376. Mr. Al-Thani is left to decipher whether these claims are the basis for Tohme's misrepresentation claim or some other fact.

Even presuming Tohme's allegation is that Mr. Al-Thani misrepresented he would honor the lease in the future, he fails to state a claim on numerous grounds. "Under Massachusetts law, only statements of a factual nature that are false when made" are actionable. *Edlow v. RBW, LLC*, No. CIV A 09-12133-RGS, 2010 WL 2034772, at *7 (D. Mass. May 21, 2010) (Stearns, J.), *aff'd*, 688 F.3d 26 (1st Cir. 2012) ("Statements of a promissory nature . . . are not 'false when made,' unless it can be shown that the maker never intended to carry out the promise[.]"). Tohme's allegation that Mr. Al-Thani failed to follow through with his lease promise is, thus, not actionable because "'more than mere failure to perform a promise is required to support an inference of deceptive intent.'" *Edlow*, 2010 WL 2034772, at *7 (internal citation omitted).

Additionally, Tohme fails to allege the second and third elements of misrepresentation, *i.e.*, that Mr. Al-Thani "acted with knowledge" of his representation's falsity and that Mr. Al-Thani intended for Tohme to rely on the false representation. As a result, Tohme's misrepresentation claim must be dismissed. *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 145-46 (1st Cir. 1999) (dismissing claim without evidence defendant intended to permanently close restaurant it acquired from plaintiff at the time of the acquisition).

### M.    Plaintiffs' Civil RICO Claims Must Be Dismissed

For the reasons set forth in Defendant Mr. Greenbaum's Motion to Dismiss (Dkt. No. 50), Plaintiffs' RICO Claims against Mr. Al-Thani must be dismissed for failure to state a claim. As such, Mr. Al-Thani adopts any and all arguments asserted by Mr. Greenbaum with respect to the Civil RICO claims.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, with prejudice.   Alternatively, the Court should grant Mr. Al-Thani's request for a more definite statement.

Respectfully submitted,

**KHALID BIN HAMAD BIN KHALIFA AL THANI**

By his attorneys,

*/s/ Richard Champagne*
Richard T. Champagne, BBO# 682955
Champagne Law Group, P.A.
Braintree Quincy Center
859 Willard Street Suite 400
Quincy, MA 02169
Ph: 617-273-2464
rchampagne@champlawgroup.com


*/s/ Alejandro O. Soto*
Alejandro O. Soto, Fla. Bar #0172847
Fridman Fels & Soto, PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL 33134
Ph: 305-569-7707
asoto@ffslawfirm.com
*Admitted pro hac vice*

Dated: August 17, 2020


<u>**CERTIFICATE OF SERVICE**</u>

I, Richard Champagne, counsel for Defendant Khalid Bin Hamad Bin Khalifa Al Thani, in the above-referenced matter, hereby certify that on August 17, 2020, I electronically filed the foregoing *Motion to Dismiss the Complaint for Improper Service, Lack of Personal Jurisdiction and Failure to State a Claim, and, Alternatively, Motion for More Definite Statement* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.


*/s/ Richard Champagne*
Richard T. Champagne