IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

ROBERT VON SMITH,　　　　　　　　　　　　Case No. 20-11143
TERRY HOPE,
RAMEZ TOHME,
MATTHEW PITTARD,
MATTHEW ALLENDE,
JASON MOLLENBRINK

　　　　　　　Plaintiffs,
　v.

H.E. SHEIKH KHALID BIN HAMAD
BIN KHALIFA AL THANI *et al*,

　　　　　　　Defendants.

## DECLARATION OF MATTHEW PITTARD

I, Matthew Pittard, state under the pains and penalties of perjury, the following:

1. The declarations of my affidavit are in support of Plaintiffs' Opposition to Defendants' Motions to Dismiss the Complaint for improper service, lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.

2. My statements are made from my direct and first-hand knowledge and experience.

**Employment**

3. I worked for Sheikh Khalid bin Hamad bin Khalifa Al Thani ("Mr. Al Thani"), his security and defense company Geo Strategic Defense Solutions, and his race car teams Al Anabi Racing USA, LLC ("Al Anabi Racing"), Al Anabi Performance, LLC ("AAP") and Speedtech, LLC ("Speedtech") from September 17, 2017, to July 10, 2018. (Exhibit A)

4. I was employed to perform work in the United States and the Middle East. (Exhibit B) On one occasion I worked in London, England.

5. I was promised an annual salary of $102,000.00 USD plus an end-of-the-year bonus as well as a percentage of sales and a share of ownership of Geo Strategic Defense Solutions, LLC for jointly developing the company with Mr. Al Thani. (Exhibit C)

6. When I communicated with Sheikh Khalid, it was in person, face-to-face, and via WhatsApp messaging.

7. Regarding contractual matters, Sheikh Khalid directed me to work with his employees Sonia Barber ("Ms. Barber") and Mona Atat ("Ms. Atat") to sign documentation and Mr. Al Thani's required non-disclosure. Mr. Al Thani's non-disclosure named him as the principal, protected party. I would correspond with Ms. Barber at sonia@khalthani.com. I would correspond with Ms. Atat via mona-qataracing@hotmail.com.

8. Throughout my employment, when I was required to travel, Sheikh Khalid

directed me to work with Ms. Atat for travel arrangements. Ms. Atat is the main point of contact for booking travel for Mr. Al Thani's employees.

9. Throughout my employment, when I was required to authorize certain transactions or issues that needed to be resolved, Mr. Al Thani directed me to work with his Chief Financial Officer, Aman Shahani. I would correspond with him at aman@khalthani.com or via WhatsApp. I was also required to coordinate purchases, payments and shipping of personal effects with Donald Greenbaum. I would correspond with him via his personal cell at (781) 424-5978.

10. I have been paid various different ways. I have been paid by direct wire transfer and cash. I was paid via bank wire by Mr. Al Thani. (Exhibit D) When I was paid cash, it was in person, directly from Mr. Al Thani and Mr. Jason Sharp.

11. I was hired at the recommendation of another Qatari Sheikh that I had worked with in 2013 and 2014. I was continually asked for over a year to come work for Mr. Al Thani and continually rejected the offers, later agreed and was personally hired by Mr. Al Thani, and began working in Los Angeles, California.

12. Part of my job duties with Geo Strategic Defense Solutions was to develop a business plan for the new business. (Exhibit E) I also helped to legally procure and contract weapons in accordance with United States and international regulations (ITAR-International Traffic in Arms Regulations). My sources for arms procurement were infiltrated/circumvented after the theft of my personal cell phone and laptop. My Serbian contacts were of particular interest to Mr. Al

Thani. My job duties were initially to provide security operations, logistics, and obtain any necessary security equipment. On at least two occasions, on December 3, 2017 and again in early 2018, I had to shut down an attempted straw purchase that Mr. Al Thani was attempting to conduct. (Exhibit F) Mr. Al Thani was attempting to purchase weapons in the United States through strawmen on his staff and other Los Angeles residents, without proper documentation. I had to advise the staff that it was illegal without proper permitting from the Directorate of Defense Trade Controls (DDTC) US State Department or Commerce Department (BIS). Despite my best efforts, I later saw several of the guns, including sniper rifles that I had advised could not be purchased without approvals in the United States via DSP-5 and Import Authorization, DSP-83 from Doha, Qatar. These were procured via a "Straw Man" purchase and sent to the Qatar Embassy and shipped to Doha under Diplomatic Pouch.

13. Part of my job duties with Al Anabi Racing, Speedtech, and Al Anabi Performance was to manage the security of Mr. Al Thani's entourage, including their hotel stays. For example, in 2017 two of the places we raced and worked at were Las Vegas, Nevada, and San Diego, California. (Exhibit F)

14. As part of my employment, I was permitted vacation time/leave. In early June 2018, I was granted annual leave by Mr. Al Thani to return home. As soon as I had flown home, on June 18, 2018 I received a "Warning Letter" from Geo Strategic Defense Solutions, telling me I was violating company policy by leaving without asking. (Exhibit G) I was given two days to return to Doha, and told I

would have a one-way ticket purchased for me. Apparently, Mr. Al Thani had changed his mind about my leave request. I responded to the formal notice and advised Jumana Yunis, who handled legal matters for Mr. Al Thani, and Mr. Shahani, that Geo Strategic Defense Solutions, a business that I was helping build from scratch with Mr. Al Thani, did not have the policy they were referring to nor did any of the companies have a policy such as that. (Exhibit H)

15. I was terminated on July 10, 2018, by Mr. Al Thani after I refused to turn over Plaintiff Ramez Tohme ("Mr. Tohme"), who Mr. Al Thani was holding against his will. My refusal to turn over a fellow American offended Mr. Al Thani, who is accustomed to getting what he wants, when he wants it. After that Mr. Al Thani threatened to kill me and my family and bury me in the desert. This information was relayed directly to the US Embassy RSO Sales after the threat was made. I had already helped Mr. Tohme escape the palace once, and I feared that Mr. Al Thani would kill Mr. Tohme if he returned and was not going to advise of his whereabouts.

16. The day I was terminated, Mr. Al Thani required that I sign several documents, at gunpoint. (Exhibit I) I initially hesitated to sign anything and he raised his leg up and tapped a Glock that was strapped to his ankle, and told me, "In case you get frisky." On the day I was terminated, I was held against my will twice in a 24 hour period by employees and family members of Mr. Al Thani, including Mr. Khalid bin Salman Al Thani (Exhibit J). All of my work equipment was stolen from me, cellular devices with personal business contacts and laptops

containing previous work contracts, technical data and my electronics were wiped clean. It was whispered by one of the Amiri Guards whom I had a friendly relationship and trained with that "if you do not turn over all your electronics Matt you will never leave this place. I'm sorry you know there is nothing I can do." I flew home on July 11, 2018. (Exhibit K)

17. After I returned home, I was contacted once by the Regional Security Officer at the United States Embassy in Doha, Qatar, but missed the call. (Exhibit L)

18. For several weeks after I returned from Doha, Qatar, on July 12, 2018, July 14, 2018, July 16, 2018, July 19, 2018, and July 21, 2018, I reached out to Mr. Shahani asking for my equipment to be returned. (Exhibit M) I reached out to Mr. Shahani because I knew from our previous interactions, he would contact Mr. Al Thani on how to respond. (Exhibit N) On July 26, 2018, I also reached out to Mr. Abdulrahman Al Shamlan, who is the man who helped Plaintiff Ramez Tohme escape from Qatar and whom I had contact in Doha. (Exhibit O)

19. In response to my efforts to try to get my electronics and personal belongings back, on July 23, 2018, I received a cease and desist letter from Attorney Andrew Barras with Dinsmore & Shohl. (Exhibit P) The letter advised that the firm represented KH Holding, and that I was in direct contravention of the documents I had signed at gunpoint in Doha, Qatar on July 10, 2018, the day I was terminated for not turning over Mr. Tohme and assisiting in his escape.

6

**Mr. Al Thani's Involvement in His Companies and Teams**

20. Mr. Al Thani owns Al Anabi Racing USA, Al Anabi Performance, and Speedtech, LLC. I have personally provided security, and organized logistics for several of the drivers, crew, and Mr. Al Thani's staff who are a part of these teams.

21. While at the race tracks, I would personally drive Mr. Al Thani around.

22. I would be appropriately armed, and carry passports, credit cards, cellular devices, money and medication for him.

23. I have provided security at the Qatar Race Club, throughout the United States, and at Mr. Al Thani's personal residences.

24. Each team has trucks, trailers, garages, and their own garages in Doha, Qatar at the Qatar Race Club.

25. I was required to wear badging at the race tracks while working for Mr. Al Thani. The badges said I was an employee of Al Anabi Racing, Speedtech, and "AAP." I also was instructed to wear Team AAP apparel at these events.

26. Mr. Al Thani is very proud of owning these teams and the Qatar Race Club.

27. The Government of Qatar has used Mr. Al Thani and the Qatar Race club as an example of how the United States and Qatar can do business together. (Exhibit R) The Government of Qatar has publicly stated that Mr. Al Thani owns Al Anabi Racing

28. Sheikh Khalid's "brand' is all over everything he owns. He uses "KH," and "Al Anabi." He puts the Qatari flag and "Qatar" on the trucks and trailers of the race car teams. The crew members wear uniforms that have "KH" and "Al Anabi Racing," and "Qatar" on them.

29. I was required to wear a polo shirt, hats and carry a backpack with "KH" on it, which I still have in my possession.

30. While reviewing documents related to this case, I recognized an address on the corporate filings of Al Anabi Performance- 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202. (Exhibit S) That is the address of Dinsmore & Shohl, the law firm that sent me the cease and desist letter. The name of the organizer, J. Eric Quinn, is a partner at Dinsmore & Shohl. (Exhibit T)

**Pattern of Behavior**

*Hiring and Non-Payment of Employees*

31. Mr. Al Thani pays people when he feels like, or not at all.

32. I was not paid consistently and had to fight to get paid at all. I was never paid any of my bonuses or any portion of Geo Strategic Defense Solutions.

33. Mr. Al Thani uses his role in the Royal Al Thani family and his stated position that he is the Qatari Government and will do whatever he would like.

Pursuant to 28 U.S.C. §1746, I state under penalty of perjury that the foregoing is true and correct.

Executed on 14th day of September 2020.

                                                                MATTHEW PITTARD